**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sterling R. SMITH, Defendant–Appellant.**

No. 92–3596.

United States Court of Appeals, Seventh Circuit.

Argued May 6, 1993.

Decided Sept. 16, 1993.

Andrew B. Baker, Jr., Asst. U.S. Atty., Diane L. Berkowitz (argued), Asst. U.S. Atty., Dyer, IN, for plaintiff-appellee.

James H. Voyles (argued), Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, IN, for defendant-appellant.

Before CUDAHY, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Part of Sterling Smith's New Year's Eve celebration included randomly firing a .44 calibre pistol. In the process he shot and killed a neighboring partygoer, Robert Knight. An Indiana jury convicted Smith of involuntary manslaughter. Four years later, as the possibility of release from state prison moved closer, the United States indicted Smith for being a felon in possession of a handgun. Smith pleaded guilty but reserved several issues for appeal. He challenges his conviction asserting that the United States Attorney waited too long to indict, and he challenges his sentence because the district court found that the underlying offense was murder, not manslaughter. We affirm.

## I. Background

In the early morning hours of January 1, 1988, Smith celebrated the New Year by waving and firing a Ruger Blackhawk, .44 magnum revolver in the air. He also was arguing with and yelling at residents of an adjacent home holding their own celebration. When several of the partygoers, including Robert Knight, learned that a man was walking toward the house shooting a gun, they went outside apparently to persuade him to cease fire. As he approached Smith's back yard, Knight tripped and lost his balance. Smith yelled at Knight and shot him.

An Indiana jury acquitted Smith of murder, but found him guilty of a lesser offense, involuntary manslaughter. The court sentenced him to eight years, the statutory maximum. With credit for "good time," he was eligible for release after serving four years.

Approximately two weeks before his scheduled release, the United States indicted Smith under 18 U.S.C. §§ 922(g)(1) & 924. He had killed before, having served four years in prison for a 1976 conviction of voluntary manslaughter in Lehigh County, Pennsylvania. The federal district court found that Smith unlawfully possessed a firearm (being a convicted felon) and knowingly and intentionally killed Robert Knight. He was sentenced to five years in prison, the statutory maximum. Smith appeals, because the court sentenced him using murder instead of involuntary manslaughter as the underlying offense, and because the government's delay in indicting him for the gun offense precluded the possibility of receiving a concurrent sentence.

## II. Analysis

### A. Prosecutorial Discretion

Smith was convicted in state court of involuntary manslaughter in October 1988; his federal indictment on gun charges was handed down in December 1991. He argues that the United States waited too long to secure the indictment. The parties do not dispute that pre-indictment delay (even if returned within the statute of limitations) may constitute a due process violation if it actually and substantially prejudices a defendant. *See United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *United States v. Williams*, 738 F.2d 172, 175 (7th Cir.1984).

Smith asserts that the Indiana authorities were irritated for failing to secure a murder conviction. He argues that the federal authorities retaliated and engaged in vindictive prosecution. This ignores that Indiana and the United States are dual sovereigns. Each acts independently under its own laws and in its own interests. *See United States v. DeMichael*, 692 F.2d 1059, 1062 (7th Cir.1982), *cert. denied*, 461 U.S. 907, 103 S.Ct. 1878, 76 L.Ed.2d 809 (1983). The Indiana prosecutor had no control over the federal indictment process. Likewise, the United States had no control over how Indiana dealt with or defined the death of Robert Knight.

■ Smith complains that the federal government delayed the indictment in order to strip him of his opportunity for concurrent sentencing. This is pure speculation. The lost possibility of serving any federal sentence concurrent with a state sentence does not violate any due process right. *United States v. Koller*, 956 F.2d 1408, 1416 (7th Cir.1992) (a defendant has no right to serve state and federal sentences concurrently; "thus, he suffered no prejudice."); *accord United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1051 (9th Cir.1990). Thus, even had the federal sentence been imposed shortly after the state conviction, it could still have been consecutive to the state sentence. Having suffered no prejudice, we need not delve into why the government did not secure an indictment until nearly four years after the shooting.

## B. Sentencing

■ At the sentencing hearing, the district court found that while Smith unlawfully possessed a firearm, he knowingly and intentionally killed Robert Knight. The court concluded that under Sentencing Guideline § 2K2.1(c) (firearms), the underlying offense for sentencing purposes was Guideline § 2A1.2 (second degree murder). This ultimately placed Smith at base level 31, with a sentencing range from 135 to 168 months. Notwithstanding the Guideline range, pursuant to Guideline § 5G1.1(a) and 18 U.S.C. § 922(g)(1), the court sentenced him to what it considered the maximum allowable statutory term, 60 months.[1] Smith argues that the offense of conviction in this case was involuntary manslaughter, meaning a base level of 14 as opposed to 31. Smith also argues that the court could not classify Smith's offense as

second degree murder because Indiana does not recognize such an offense.

When sentencing a criminal, a court first searches for the offense guideline most applicable to the offense of conviction. Guideline § 1B1.2(a). Contrary to Smith's understanding, the court is not attempting to sentence him for involuntary manslaughter in this case. Indiana has already done that. Smith, a felon, carried a handgun. This violated 18 U.S.C. § 922(g)(1). His "offense of conviction" falls under Guideline § 2K2.1, unlawful possession of a firearm. Under Guideline § 2K2.1(c), if the defendant used the firearm in connection with the commission of another offense, the Guideline section governing the other offense should be used if it would result in a higher base offense level.[2]

While Smith carried the handgun, his "other offense," (not his "offense of conviction") involved the death of Robert Knight. After listening to several witnesses at the sentencing hearing, the district court noted that after several people warned Smith to stop shooting or he would kill someone at the crowded party, he responded with a threat to kill everybody. Also, just before shooting Knight, Smith yelled "You must be crazy to mess with a guy with a .44." The court could easily conclude that second degree murder best described the underlying offense. *See* 18 U.S.C. § 1111. This called for a base offense level of 33.[3] Guideline § 2A1.2.

The Indiana jury acquitted Smith of murder in favor of the lesser charge of involuntary manslaughter. Smith asserts that no case has allowed a federal district court to compute a base offense level upon conduct for which a defendant has been acquitted. *United States v. Morrison*, 946 F.2d 484, 501 (7th Cir.1991), refutes this. *See United States v. Corbin*, 998 F.2d 1377 (7th Cir.1993)

---

1. Because Smith illegally possessed the firearm after November 1, 1987, we note that under 18 U.S.C. § 924(a)(2), the statutory maximum penalty for conviction under 18 U.S.C. § 922(g) is 120 months, not 60. The government has not appealed the sentence, nor have the parties briefed the issue.

2. Even if the offense of conviction in this case were involuntary manslaughter, Smith would not receive the base level of 14 he seeks. Because Smith's prior felony conviction involved a crime of violence, his base offense level would be 20

under Guideline 2K2.1(a)(4). Contrary to Smith's understanding, Guideline 2K2.1(c) can be used to increase his base offense level, but not decrease it.

3. The court found a total base offense level of 31, not 33. The parties have not disputed between the two figures. Because the court assigned a lower base offense level than might be appropriate, and still yielded the highest statutory maximum penalty, we need not address the matter.

(applying Guideline 2K2.1(c) and assigning the base level for the underlying offense); *accord United States v. Shinners*, 892 F.2d 742 (8th Cir.1989) (in a case involving the illegal possession of a firearm, the court assigned a different base offense level based on an aggravated assault). Also, the Guideline text speaks otherwise. In searching for the offense committed in connection with the firearm conviction, Guideline 2K2.1(c)(1)(B) applies "the most analogous *offense guideline* from section 2A1." (Emphasis added.)

Acquittals do not dictate the parameters of what a district court can consider when determining a sentence. "Judges may take other crimes into account when selecting a sentence under the guidelines, even if the defendant has been charged with and acquitted of those crimes." *See United States v. Masters*, 978 F.2d 281, 285–86 (7th Cir.1992) (and cases cited), *cert. denied*, —— U.S. ——, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993).

> Nothing in either the guidelines or the Constitution prevents a judge from taking account of conduct in which the defendant engaged, whether or not an acquittal prevents the imposition of criminal penalties directly on that conduct. A verdict of "not guilty" does not mean that the defendant didn't do it; it means that the prosecution failed to establish culpability beyond a reasonable doubt. The facts, when properly established according to a lower standard of proof, may be used as evidence in another criminal case.

*United States v. Fonner*, 920 F.2d 1330, 1332 (7th Cir.1990). Furthermore,

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

*United States v. Lawrence*, 934 F.2d 868, 874 (7th Cir.) (*citing* 18 U.S.C. § 3661), *cert. denied*, —— U.S. ——, 112 S.Ct. 372, 116 L.Ed.2d 323 (1991). Thus, the district court acted properly when determining that Smith used the firearm in connection with the murder of Robert Knight and assigning a base offense level for such conduct.

 In his final argument on appeal, Smith asserts that the court could not classify Smith's offense as second degree murder because Indiana does not recognize such an offense. Smith continues to believe, incorrectly, that events within the jurisdiction of Indiana somehow control the federal Sentencing Guidelines. To the contrary, if the Guidelines' definition does not coincide with any relevant state court definition, the district court has no need to apply the state court definition. *See, e.g., United States v. Smith*, 910 F.2d 326, 331 (6th Cir.1990). "The district court shall apply the federal definition." *Id.*

### III. Conclusion

Smith suffered no prejudice from the United States delaying his indictment on firearms charges. He has no right to a concurrent sentence with any state court term. Contrary to Smith's assertions, his offense of conviction was illegal possession of a firearm, not involuntary manslaughter. Whether the Guidelines produce a base offense level for second degree murder while Indiana contains no such definition matters not. The district court is AFFIRMED.