In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3381

United States of America,

Plaintiff-Appellee,

v.

Leon Thomas,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:99-CR-191--James T. Moody, Judge.

Argued April 12, 2001--Decided February 19, 2002

   Before Easterbrook, Ripple, and Williams,
Circuit Judges.

   Williams, Circuit Judge.  Leon Thomas was
convicted by a jury of unlawful
possession of a firearm as a convicted
felon and for bartering a stolen firearm.
Although each conviction carried a
maximum sentence of ten years, Thomas was
exposed to a sentence of no less than
fifteen years on the possession
conviction because of three prior felony
convictions. The district court sentenced
Thomas to life imprisonment, in part by
cross-referencing the first degree murder
guideline. Because we find that the
district court's application of the
homicide cross reference was not based on
sufficient findings, we vacate and remand
for resentencing.

I.  BACKGROUND

  A.  Facts

   On the morning of November 21, 1999,
Thomas, a convicted felon, and Gerald
Blunt went to the home of Michael
Hutcherson. Thomas gave Hutcherson a
semi-automatic pistol in exchange for
thirty dollars' worth of rock cocaine.
Later that day, police officers stopped
Thomas and Blunt while Thomas was driving
a Dodge automobile and he was arrested.

Before trial, the government notified Thomas that if he was convicted of the unlawful possession of a firearm as a convicted felon, it would seek to enhance his sentence for that offense to a term of imprisonment not less than fifteen years pursuant to 18 U.S.C. sec. 924(e)(1), based on Thomas's prior robbery convictions in Indiana and Georgia. Thomas stipulated at trial that he knew that the pistol had been stolen. The jury convicted him of unlawful possession of a firearm as a convicted felon in violation of 18 U.S.C. sec.sec. 922(g)(1), 924(a)(2), receiving a firearm while under indictment in violation of 18 U.S.C. sec.sec. 922(n), 924(a)(1), and bartering a stolen firearm under 18 U.S.C. sec.sec. 922(j), 924(a)(2). The conviction for receiving a firearm while under indictment was subsequently vacated.

## B.   Sentencing Hearing

At sentencing, the government tried to connect Thomas to the murder of the firearm's owner, Armondo Leal. It presented evidence that the night before Thomas pawned Leal's pistol, Leal was shot to death in the Dodge car that Thomas was found driving. The gun used in the murder was never recovered. A bullet hole was found in the lower-front passenger door of the car and Leal's blood was found on the driver's seat of the car. Leal's blood was also on the pavement of Thomas's driveway and on Thomas's shirt. The government surmises that the bloodstains were found in those locations because Leal was taken out of the car and laid temporarily in Thomas's driveway and Thomas got into the car after Leal was shot but before the blood dried.

The government also presented evidence through the testimony of Detective Titus that an unidentified neighbor of Thomas's told Detective Jackson that on the night of the murder, he saw Leal driving the Dodge car in the vicinity of Thomas's home. The neighbor stated that he heard gun shots and shortly thereafter saw Thomas driving away in the same car. Detective Titus further testified that on the night of Thomas's arrest, Thomas's uncle was murdered and Thomas's house was set on fire. These crimes were done, in

his opinion, in retaliation for Leal's murder.

Based on this evidence, the district court concluded, "Whether [Thomas] pulled the trigger or not, the Court finds that it's pretty clear that he was involved in the killing of Armondo Leal, and the theft of Mr. Leal's gun." The court then adopted the recommendations of the Presentence Investigation Report ("PSR"), and cross-referenced Thomas's conviction for possession of a firearm while a felon with the homicide guideline for first degree murder, sec. 2A1.1. The court also considered Thomas's prior convictions and determined that Thomas was an armed career criminal under 18 U.S.C. sec. 924(e)(1). The court then sentenced Thomas to life imprisonment for his conviction for unlawful possession of a firearm as a convicted felon, and to a concurrent ten-year sentence for bartering a stolen firearm./1

II.  ANALYSIS

On appeal, Thomas challenges the district court's: 1) admission of hearsay testimony of an unidentified witness; 2) cross-referencing of his conviction for unlawful possession of a firearm as a convicted felon with the homicide guideline for first degree murder; 3) enhancement of his sentence for prior convictions when he was not indicted or convicted by the jury under the Armed Career Criminal Statute, in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000); and 4) use of the homicide cross-reference to increase his sentence above the statutory maximum for the offenses of conviction without being charged and proved beyond a reasonable doubt at trial, also in violation of Apprendi. Because we prefer to dispose of cases on factual grounds rather than on constitutional ones, see United States v. Westmoreland, 240 F.3d 618, 629 (7th Cir. 2001), we proceed to Thomas's factual challenges first.

A.  Hearsay Objection

Thomas's first argument challenges the admission of hearsay testimony, which was used to establish Thomas's involvement in Leal's murder. Hearsay is permitted at sentencing as long as it is reliable and

the defendant is afforded an opportunity to rebut the evidence. United States v. Corbin, 998 F.2d 1377, 1385 (7th Cir. 1993); United States v. Beal, 960 F.2d 629, 634 (7th Cir. 1992) (applying same standard to hearsay within hearsay testimony). Reliability may be established by corroborating evidence. United States v. Morrison, 207 F.3d 962, 968 (7th Cir. 2000).

Detective Titus testified that an unidentified neighbor told Detective Jackson that on the night of Leal's murder, the neighbor saw Leal driving a Dodge car in the vicinity of Thomas's home, heard gunshots, and saw Thomas driving away in the same vehicle. We are satisfied that both layers of hearsay (between the detectives, and between Detective Jackson and the neighbor) are reliable because the neighbor's statements were supported by evidence linking Thomas to the crime scene. Significantly, Thomas was found driving the Dodge car the following day, Leal was killed by multiple gunshot wounds, and Leal's blood was found in the car, on Thomas's shirt, and in Thomas's driveway. In light of this corroborative evidence and the fact that Thomas does not argue that he was denied an opportunity to rebut the testimony, we cannot say that the district court abused its discretion in allowing Detective Titus to so testify.

B.   Homicide Cross Reference Issue

Thomas's next challenge is to the district court's application of the homicide cross reference for first degree murder to his conviction for the unlawful possession of a firearm as a convicted felon. He argues that there was no evidence that Leal's death resulted from his possession of the pistol for which he was convicted, and even if there was such evidence, the court should not have chosen first degree murder over an offense with a lesser culpability. Because we find that the district court failed to make sufficient findings to support the application of the homicide cross reference, we vacate Thomas's sentence and remand for further proceedings.

1.   Standard of review

Normally we review a district court's application of the murder cross reference for clear error, and its interpretation of the Sentencing Guidelines de novo. Westmoreland, 240 F.3d at 635. The government argues, however, that our review should be for plain error because although Thomas objected below to the court's finding that he was involved in the murder, he never claimed that the death did not result from the possession of the pistol charged in his indictment or that first degree murder was improper. We will reverse under the plain error standard only if the defendant demonstrates that 1) there was error, 2) the error was plain, 3) the error affected the defendant's substantial rights, and 4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Westmoreland, 240 F.3d at 633.

During the sentencing hearing, Thomas's counsel argued that:

All you can have him guilty of is sitting in the car where there was bloodstained seats. That's all he has and the fact that the blood was in his driveway--sure Mr. Leal could have been killed after this, but there is nothing that indicates he did the killing. . . . As far as the murder, I don't believe there is enough to tie it into this case, judge, and I think double jeopardy--or the notion of jeopardy should protect him in this case. For that reason I would ask that homicide be denied.

We agree with the government that this objection was insufficient to have alerted the district court and the government to the specific grounds of Thomas's arguments that he now raises on appeal. See United States v. Hardamon, 188 F.3d 843, 848 (7th Cir. 1999); United States v. McClellan, 165 F.3d 535, 551 (7th Cir. 1999). Therefore, we will review Thomas's challenge for plain error. With the parameters of our review established, we proceed to the merits of Thomas's argument.

2. Homicide Cross Reference Guideline

Section 2K2.1(c) of the Sentencing

Guidelines states that "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, [and] death resulted," the court must cross-reference the "most analogous offense guideline from" the Homicide Guidelines. Applying sec. 2K2.1(c), a sentencing court should proceed in two steps. First, it "must ascertain whether death resulted from the defendant's conduct. If so, [it] must identify the analogous Homicide Guideline that most closely resembles the defendant's conduct." United States v. Walls, 80 F.3d 238, 241 (7th Cir. 1996).

a. If "death resulted"

To determine "if death resulted," the sentencing court must ascertain whether the defendant's conduct was "intentional or reckless" and whether death was "a foreseeable risk" of that conduct. Id. Generally, this means that the defendant's possession of a weapon during the commission of another offense "put into motion a chain of events that ended in a tragedy." Id. at 242. For example, in Walls, the evidence introduced at sentencing demonstrated that the defendant gathered a group of armed men, proceeded to a rival's house where a gunfight ensued, and fired a shot into a crowd in which an innocent bystander was killed. Id. at 240. The district court cross-referenced Walls's conviction for possession of a firearm while a felon with the homicide guidelines, reasoning that Walls "put in motion this series of events that resulted in the taking of a human life." Id. We affirmed concluding that irrespective of whether Walls fired the fatal shot, his conduct resulted in the bystander's death. Id. at 242. Accord United States v. Smith, 5 F.3d 259 (7th Cir. 1993) (approved application of homicide cross reference to a defendant who fired recklessly into a group of New Year's Eve partygoers killing one of them); United States v. White, 979 F.2d 539 (7th Cir. 1992) (affirming application of the general "death results" guideline, U.S.S.G. sec. 5K2.1, to a defendant who transported a minor across state lines for the purpose of prostitution who was killed, presumably by a customer).

The problem here is that the district court did not make any findings that Thomas's conduct put into motion a series of events that led to Leal's death. All the court found was that Thomas was "involved" in Leal's murder and "the theft of Mr. Leal's gun." We are unable to determine if the theft and possession resulted in Leal's death or if Leal's death precipitated the theft and possession. And, the evidence that Thomas was found in possession of Leal's pistol the day after the murder, and Detective Titus's testimony that the blood on Thomas's t-shirt was due to Thomas getting into the car after Leal had been shot, could support the conclusion that Thomas's involvement occurred after Leal's death. Most significantly, because Leal was not shot with his own gun, we do not know if Thomas even possessed a firearm before or at the time of the murder. This is important because, unlike the defendant in Smith, the pistol that Thomas was found in possession of was not the weapon used to kill Leal. See Smith, 5 F.3d at 260 (defendant used firearm to shoot and kill partygoer). As far as we can tell, the pistol that Thomas possessed was also not used to shoot at Leal. Cf. Walls, 80 F.3d at 240 (defendant fired shot blindly toward enemy's house and an innocent bystander was killed).

Because there are insufficient findings as to the sequence of events and whether Thomas possessed any firearm before or at the time of Leal's death, the district court's application of the cross reference was in error. This error, which was plain, affected Thomas's substantial rights and the outcome and integrity of the district court proceedings because without it, Thomas could have received a sentence less than life imprisonment. And, without sufficient findings, we cannot be confident that a miscarriage of justice did not occur. Because the district court did not make sufficient findings to conclude that Leal's death resulted from Thomas's possession of a firearm during the commission of another offense, Thomas's life sentence for the unlawful possession of a firearm as a convicted felon is vacated.

b. "Most analogous homicide

guideline"

Even if we were to uphold the court's conclusion that Leal's death resulted from Thomas's possession of a firearm in connection with another offense, the court's application of the cross reference would still be improper because the court's selection of first degree murder as opposed to an offense with a lesser culpability was also plain error. After a sentencing court determines that death resulted from the defendant's possession of a firearm, it must choose the most appropriate homicide guideline: first or second degree murder, or voluntary or involuntary manslaughter. Walls, 80 F.3d at 242. Under the federal statute, from which we borrow the definition of first degree murder is the unlawful killing of a human being with malice aforethought, done with premeditation or committed in the perpetration of certain enumerated felonies. 18 U.S.C. sec. 1111(a). Here, again, the district court made insufficient findings. We recognize that Leal's murder did not occur "[w]ithin the special maritime and territorial jurisdiction of the United States." 18 U.S.C. sec. 1111. Nevertheless, courts use the definition set forth in sec. 1111 for simplicity's sake. See Walls, 80 F.3d at 242; Smith, 5 F.3d at 262. The parties here have assumed that federal law, in particular 18 U.S.C. sec. 1111, supplies the appropriate substantive definition of homicide. We accept their shared assumption for the purpose of this case, without foreclosing the possibility of turning to other definitions should that question be raised in future litigation.

i. Premeditation

The district court did not make any findings as to Thomas's state of mind, or his degree of planning or preparation. The court relied on the unchallenged factual findings and conclusions of the PSR, which does not lay out the elements of first degree murder or discuss how the facts relate to those elements. We do not know if there was an argument between Leal and Thomas, how much time lapsed between the time the neighbor saw Leal drive up and the time the neighbor heard the gunshots, the nature of the relationship between Leal and Thomas

before the incident, or if Thomas just drove away in the car after Leal was murdered by someone else. Because the district court made no findings to support premeditation, the district court's selection of first degree murder as the most appropriate homicide guideline must be remanded for further proceedings.

### ii. Felony Murder

The government argues that despite the lack of findings supporting premeditation, the district court's selection of first degree murder can be sustained under the felony murder doctrine. Under that doctrine, every murder "committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnaping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary or robbery . . . is murder in the first degree." 18 U.S.C. sec. 1111(a). Thomas responds that because his offenses of conviction--unlawful possession of a firearm as a convicted felon and bartering a stolen firearm--are not among those offenses listed as predicate felonies, the felony murder doctrine cannot apply. He relies on a Tenth Circuit case which holds that in order for the felony murder to apply, the defendant's offense of conviction must serve as a predicate felony under 18 U.S.C. sec. 1111(a). United States v. Fortier, 180 F.3d 1217, 1226 (10th Cir. 1999).

In Fortier, the defendant was convicted of conspiring to transport stolen firearms, transporting stolen firearms, making a materially false statement to the FBI, and misprision of a felony. Id. at 1219. The district court found that the defendant's sale of the stolen firearms to Timothy McVeigh and the deaths that resulted from McVeigh's bombing of the federal building in Oklahoma brought the defendant within the homicide cross reference for first degree murder. The Tenth Circuit vacated the defendant's sentence reasoning that the use of the felony murder doctrine at sentencing should be restricted to situations in which the defendant's offense of conviction is one of the enumerated felonies in 18 U.S.C. sec. 1111(a), and the defendant's offenses of

conviction did not "even [come] close to the predicate felonies described in section 1111(a)." Id. at 1226.

Although we have not had occasion to decide this issue, we have reached a conclusion consistent with Fortier. In United States v. Prevatte, 16 F.3d 767 (7th Cir. 1994), aff'd in part, rev'd in part, dismissed in part, 66 F.3d 840 (7th Cir. 1995), we affirmed the district court's conclusion that a defendant convicted of maliciously destroying property by means of explosives could be sentenced under the first degree murder guideline for the deaths that resulted from the explosion. We looked to the defendant's offense of conviction and reasoned that it was sufficiently similar to arson, one of the offenses enumerated in the felony murder statute. Because the defendant's offense of conviction was sufficiently similar to one of the predicate felonies, it supported the selection of first degree felony murder as the most analogous offense guideline. Id. at 780; see also United States v. Martin, 63 F.3d 1422, 1434-35 (7th Cir. 1995) (remanding to district court to determine if the defendant, convicted of arson, should also be sentenced under the first degree murder guideline for conduct that led to the death of two firefighters).

We do not need to determine in this case whether, as Fortier stated, a formal charge on the predicate offense is essential, or whether it is proper to use real-offense principles, as United States v. Greene, 834 F.2d 1067, 1071-72 (D.C. Cir. 1987), holds./2 Cf. United States v. Taylor, 272 F.3d 980 (7th Cir. 2001) (treating enhancement under sec. 2K2.1(a) as an example of a real-offense component in the Guidelines). The subject is not presented by the case in its current posture, because the district court did not address the question whether Thomas committed robbery or any other act that could be the basis of a felony murder finding. All the court found was that Thomas was involved in the theft of Leal's gun, and theft is not one of the predicate offenses listed in 18 U.S.C. sec.1111(a). Just as a court needs facts to support a finding of premeditation for "regular" first degree murder, it needs facts to support a felony for first degree felony murder. Additionally, there

is nothing in the record to suggest that the district court recognized that it had the option under Application Note 1 to sec. 2A1.1 to depart downward from life imprisonment. See Prevatte, 16 F.3d at 784-85 (holding that when felony murder provides the basis for the sentence enhancement, a district court's failure to make findings as to the defendant's mental state to determine if a departure down from life imprisonment required a remand). Therefore, the district court's selection of first degree murder under a felony murder theory cannot stand.

iii.    Plain Error Test

The incremental error in the court's selection of first degree murder over second degree murder or manslaughter, although not the worse we have seen, is enough to satisfy the plain error standard. With Thomas's criminal history category of VI, a second degree murder finding would have resulted in a sentencing range of 235-293 months as opposed to life imprisonment. Manslaughter would have resulted in significantly lower sentencing ranges (from 24 to 137 months), but because of Thomas's prior convictions, those ranges were unavailable. See discussion infra Part IIC. The district court was not limited to the sentencing range for second degree murder, however, because it could have selected a sentence somewhere between second degree murder and voluntary manslaughter in fashioning the appropriate sentence. See, e.g., Walls, 80 F.3d at 242 (affirming sentence halfway between second degree murder and voluntary manslaughter).

Here, at sentencing, the government was allowed to come in the back door, where there is a lower burden of proof and lower procedural safeguards, to essentially convict Thomas for Leal's murder, when it could not get a murder conviction at trial due to the lack of evidence of premeditation and the absence of a predicate felony. And even under the lower standards, the district court failed to make sufficient findings regarding Thomas's state of mind or commission of a predicate felony. Finally, even if Leal's "death resulted" from Thomas's conduct, Thomas's sentence must still be vacated and remanded

because the court committed plain error in sentencing Thomas to life imprisonment without making sufficient findings.

C. Prior Felony Convictions

Thomas also challenges the court's use of his prior convictions to enhance his sentence for the unlawful possession of a firearm as a convicted felon to a minimum of fifteen years under 18 U.S.C. sec. 924(e)(1). In addition to a due process challenge that we will address in the next section, Thomas argues that the court erred in finding that he committed three violent felonies on different occasions. We review questions of law regarding sec. 924(e) de novo. United States v. White, 997 F.2d 1213, 1215 (7th Cir. 1993). Because Thomas committed at least three violent felonies on occasions different from one another, we find that the prerequisites of sec. 924(e) were satisfied.

Title 18 U.S.C. sec. 924(e)(1), also known as the Armed Career Criminal Act, provides that:

In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years . . . .

A violent felony is defined as "any crime punishable by imprisonment for a term exceeding one year, . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." 18 U.S.C. sec. 924(e)(2)(B). Thomas concedes that he has one conviction for a violent felony in Indiana, but argues that his Georgia conviction for three counts of robbery by intimidation should not be included because there were insufficient facts for the district court to find that the Georgia conviction involved violent felonies committed on different occasions.

The Georgia Code states that robbery by intimidation is a lesser included offense of armed robbery. Ga. Code Ann. sec. 16-8-41 (2000). A conviction for robbery by intimidation "'requires proof that the

theft was attended with such circumstances of terror--such threatening by word or gesture, as in common experience, are likely to create an apprehension of danger, and induce a [person] to part with his property for the safety of his person.'" Smith v. State, 543 S.E.2d 434, 435 (Ga. Ct. App. 2000) (quoting Johnson v. State, 392 S.E.2d 280, 282 (Ga. Ct. App. 1990)). Based on this definition and the fact that Thomas does not challenge the PSR's finding that he used a handgun to commit the robberies, we are satisfied that the Georgia conviction for three counts of robbery by intimidation meets the Armed Career Criminal Act's definition of violent felony.

Thomas also argues that the robberies that constituted the Georgia conviction were not "committed on occasions different from one another." See 18 U.S.C. sec. 924(e)(1). We set forth the parameters of what satisfies this requirement in United States v. Hudspeth, 42 F.3d 1015 (7th Cir. 1994) (en banc). In Hudspeth, a majority of this court held that when a defendant has committed multiple crimes within a short period of time, the relevant inquiry is whether the crimes were simultaneous or sequential. Id. at 1021. We concluded that crimes committed sequentially, against different victims, at different times and different locations satisfied the requirement that they must be "committed on occasions different from one another." Id. Under this standard, at least two of the three Georgia robberies that Thomas committed were on different occasions because they occurred on different dates and involved different victims./3 When added to the Indiana conviction that Thomas does not challenge, the district court properly found that Thomas committed at least three violent felonies on occasions different from one another, thereby making him an armed career criminal.

D.  Due Process Violation

Finally, Thomas argues that the use of his prior convictions and the application of the homicide cross reference to increase his sentence for the possession conviction above the statutory maximum for that offense violates the due process clause because the facts underlying the

prior convictions and the homicide cross reference were not submitted to the jury and proved beyond a reasonable doubt. See Apprendi v. New Jersey, 530 U.S. 466 (2000). We reject Thomas's challenge to the use of the prior convictions to increase his sentence for the reasons stated in United States v. Skidmore, 254 F.3d 635, 642 (7th Cir. 2001); United States v. Jones, 245 F.3d 645, 649 (7th Cir. 2001); and United States v. Brough, 243 F.3d 1078, 1081 (7th Cir. 2001). And, as we discussed earlier, because Thomas was correctly found to be an armed career criminal, the maximum sentence he faced was life imprisonment. Therefore, there was no due process violation in sentencing him to a term of life imprisonment because the sentence was within the statutory cap. Westmoreland, 240 F.3d at 636.

III.  CONCLUSION

   In sum, we uphold the district court's decisions to admit hearsay testimony and enhance Thomas's sentence to reflect his status as an armed career criminal. However, we conclude that the court's application of the homicide cross reference for first degree murder was based on insufficient findings. We therefore VACATE Thomas's sentence forunlawful possession of a firearm as a convicted felon and REMAND for proceedings consistent with this opinion.

FOOTNOTES

/1 Thomas does not challenge on appeal his sentence for bartering a stolen firearm.

/2 We recognize that Greene was not a Sentencing Guidelines case, however, its analysis is helpful here.

/3 It is unclear from the record whether the third robbery, which was committed on the same day as one of the others, was also committed on a different occasion because we do not know the time of day that the robbery occurred nor do we have any facts (other than the identity of the victim and the amount of money taken) surrounding the robbery.