**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cary L. FISCHER, Defendant–Appellant.**

No. 93–2828.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1994.

Decided Sept. 12, 1994.

Grant C. Johnson, Asst. U.S. Atty., Steven Pray O'Connor, Asst. U.S. Atty. (argued), Madison, WI, for plaintiff-appellee.

Thomas L. Shriner, Jr., Michael J. Aprahamian (argued), Foley & Lardner, Milwaukee, WI, for defendant-appellant.

Before ESCHBACH, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

On June 10, 1993, while on supervised release after having served two years of a five-year federal (pre-Guidelines) sentence for a drug conviction, Cary Fischer terrorized his ex-girlfriend, Billie Jo Stroede. Angry about Stroede's relationship with another man—she was corresponding with an inmate at the Oregon State Prison Farm near Fitchburg, Wisconsin—Fischer broke into Stroede's home and bedroom early in the day and verbally abused her. She managed to convince him to leave without a physical confrontation but he returned in the afternoon. Standing next to a container of gasoline while holding matches, Fischer threatened to burn down the house (in which Stroede's children and wheelchair-bound father also lived) if she would not accompany him to the Prison Farm and tell her friend there that· their relationship was over. Fearful for the safety of her family, Stroede agreed.

Fischer then took her on a harrowing ride. Vowing several times to kill her throughout the journey, Fischer slammed the passenger side of his car against the guardrail of an overpass at one point, crashed into a construction barricade at another, repeatedly drove into oncoming traffic and weaved between highway construction markers striking pylons and barrels in the process. They did eventually make it to the prison parking lot where Fischer physically assaulted Stroede, grabbing and kicking her. A nearby prison guard intervened and separated Fischer from Stroede. Fischer was able to drive off but he was soon arrested and charged with reckless endangerment, false imprisonment, intimidation of a victim and domestic battery. Belligerent at the time of arrest, Fischer also smelled of intoxicants and refused to allow his blood to be tested for alcohol.

This escapade, unsurprisingly, violated several conditions of Fischer's supervised release, and after a hearing on a petition from its probation officer the district court, pursuant to 18 U.S.C. § 3583(e)(3), revoked Fischer's release and ordered him imprisoned for the maximum allowable term, three years.

On appeal, Fischer does not argue that the district court could not have validly done what it did relying on Fischer's drinking—he was required to "abstain from the use of all alcohol and/or other intoxicants"—or his felonious behavior—he could not commit "another· federal, state or local crime." Rather, Fischer asserts that a third cited violation—failure to "follow the instructions of the probation officer"—cannot legitimately be considered a violation because the instruction that he failed to follow was a nonministerial command properly the subject of a court-approved condition of supervised release of its own and was not something that could be left to the discretion of a lone probation officer. Because, he claims, his violation of the probation officer's order may have wrongly influenced the district court's decision whether and for how long to revoke his release, Fischer would have us remand this case to the district court for a fresh and untainted ruling.

The instruction in question, issued after previous incidents of battery against Stroede by Fischer, forbade Fischer from having any contact whatsoever—physical, telephone, letter, etc.—with Stroede. Such a significant restraint on the terms of a released prisoner's liberty is indeed something we would expect to be an explicit probationary condition. It is the court, whose reviewable judgments are rendered after an adversarial process in which the right to counsel is guaranteed, that sets and modifies the terms of supervised release. See, e.g., Fed.R.Crim.P. 32.1(b). And Congress has made clear that it considers an instruction to "refrain ... from associating unnecessarily with specified persons" to be the sort of condition that the sentencing court would impose. See 18 U.S.C.· § 3563(b)(7) (made applicable to supervised release by 18 U.S.C. § 3583(d)). An abjectly literal interpretation of a condition that a released prisoner must do just as the probation officer says would extend the authority to impose such a notable restraint—and any restraint at all—from the court alone to the probation office as well.

Probably, however, "standard condition" number three (boilerplate on the Western District of Wisconsin's "Conditions of Proba-

tion and Supervised Release" form) did not have at its genesis such a grand design. The thrust of the listed conditions that involve the probation office, and of the statutorily suggested conditions that they roughly mirror, 18 U.S.C. § 3563(b)(1)–(10) & (b)(12)–(20), is much more mundane and relates to the facilitation of the office's monitoring duties. From the company it keeps, one would surmise that the direction to follow the probation officer's instructions was unspectacularly intended to require routine cooperation with the probation officer as he carries out his ordinary duties, like drug testing, overseeing vocational and educational activities, and ensuring continued compliance with the law.

In this case, however, we need not resolve whether the probation officer exceeded his authority in issuing the order at issue nor attempt to precisely demarcate the respective provinces of the probation office and the court. Here, unlike in *United States v. Ross*, 9 F.3d 1182, 1189 (7th Cir.1993), *vacated on other grounds*, —— U.S. ——, 114 S.Ct. 2129, 128 L.Ed.2d 860 (1994), we have no "substantial doubt that, in the final analysis, the district court regarded [the remaining valid bases for its decision] to be ... independent and adequate ground[s] for the revocation of [Fischer's] supervised release" and for the imposition of the particular prison sentence. In its order the district court, while mentioning Fischer's flouting of the probation officer's instruction to stay away from Stroede, only made a formal finding of a violation "by a preponderance of the evidence" as to Fischer's breaches of Wisconsin law. Moreover, the court made clear that its selection of appropriate consequences for Fischer's conduct was based upon the nature and danger of his anti-social behavior, not a mechanical tally of the conditions of supervised release that it thought to be technically infringed:

> The Court concludes that this is not that "lovers' quarrel" to which the defendant has referred, but presents circumstances which the Court believes endangered the lives of the victim Billie Jo Stroede and her family. The Court further concludes that confinement is necessary to protect the public, particularly Billie Jo Stroede, her family and those other persons with whom

this defendant may become intimately involved from further criminal activity by the defendant. The defendant is in need of correctional treatment which can be most effectively provided during confinement. It would be grave error to allow this defendant to be released into the community for outpatient treatment where he could continue threats and physical contact with Billie Jo Stroede, causing the very damage which he has previously threatened, and further, it would unduly depreciate the seriousness of his violations if his supervised release were not revoked.... Upon the repeated egregious behavior in which this defendant has continued to engage it would be inappropriate to sentence him for any term less than the maximum period of confinement.

From this statement of reasons, there can be no doubt that the district court's response to Fischer's attack and abduction of Stroede was a measured reaction to just that and would have been no different if those actions were "only" grave crimes instead of being both grave crimes and an assumed additional violation of the conditions of supervised release. The revocation of release stands.

Fischer has also challenged the competency of his appointed counsel at the revocation hearing. As instances of deficient representation he cites counsel's multiple failures: to pursue the possibly invalid status of the no-contact condition, to review the contents of the June 10 police report with Fischer in order to prepare a challenge to their accuracy, to point out that Fischer never received the mental health care ordered as condition of his release, and to examine witnesses competently. Fischer recognizes that before he can succeed with a sixth amendment claim based on these sorts of allegations, their validity must be determined and the reasonableness and prejudicial effect of the conduct they describe must be evaluated, and these things cannot be done without an enlarged record. Fischer therefore asks that we remand for an evidentiary hearing. However, ordinarily the appropriate route to make such claims is not via a screening in the court of appeals but by motion to the district court under 28 U.S.C. § 2255. *See United States*

v. *Myers,* 892 F.2d 642, 649 (7th Cir.1990). Fischer does not seek to have his ineffective assistance claims resolved on the existing record and we do not reach them; our affirmance is thus without prejudice to his ability to present those claims properly in the future.

AFFIRMED.