**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Andre Tony WALLS, Defendant–
Appellant.**

Nos. 94–3402, 94–3403.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1995.

Decided April 3, 1996.

Joseph R. Wall (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff-Appellee.

Carole M. Stanyar (argued), Detroit, MI, for Defendant-Appellant.

Before BAUER and RIPPLE, Circuit Judges, and SKINNER, District Judge.*

BAUER, Circuit Judge.

Andre Tony Walls appeals his convictions and sentences for one count of receiving and possessing a stolen vehicle which traveled in interstate commerce, 18 U.S.C. § 2313, and two counts of possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g) and

---

* The Honorable Walter Jay Skinner, Judge of the    United States District Court for the District of

$924(a)(2)$.[1] Walls argues that the district court erred in joining for trial the two firearm charges. Walls also seeks a remand for resentencing and for an evidentiary hearing on his claim of ineffective assistance of counsel. We affirm.

## BACKGROUND

Although Walls was convicted of the run of the mill offenses of possessing a stolen vehicle and being a felon in possession of a weapon, the district court sentenced him as a murdering drug dealer. Not surprisingly, Walls would rather have been sentenced as a gun toting car thief. The difference is significant: a range of 57 to 71 months versus his actual sentence of 122 months.

Prior to sentencing, the government announced its intention to seek an upward departure based on Walls' conduct during his 1989 possession of a weapon and various uncharged drug transactions. At sentencing, the government introduced evidence illustrating Walls' criminal history. This included various drug dealing transactions for which Walls had not been charged. Based on Walls' drug dealing, the district court, pursuant to U.S.S.G. § 4A1.3, concluded that five criminal history points should be added to Walls' criminal history because his criminal record did not reflect the seriousness of his previous criminal conduct. As a result, Walls had a criminal history in category IV instead of category II. Walls does not challenge this upward departure.

The central focus at sentencing was on the facts surrounding Walls' illegal possession of a firearm in 1989. In particular, the issue was whether Walls' conduct "resulted" in the death of an innocent bystander—Euclid Lewis. If so, the Sentencing Guidelines required Walls to be sentenced under the Homicide Guidelines. U.S.S.G. §§ 2K2.1(c), 2A1.1–4. This would result in a substantial upward departure.

As it turns out, Walls did not merely possess a weapon. This is what the record shows: In 1988, Walls was shot by Aaron

Massachusetts, sitting by designation.

Allen. Walls reported this shooting to the police, but, despite knowing that Allen was the shooter, neglected to identify Allen. He also left out the fact that Allen had robbed him of some drugs. Now fast forward to 1989. Allen confronted Walls while he was playing basketball. Walls decided that he needed to straighten things out with Allen and let Allen know that he did not want to fight anymore. However, this would be no mere tête-a-tête. Walls gathered a group of armed men and proceeded to Allen's house. At this point, the facts become somewhat confused, but this much is clear: As the group approached Allen's house, a gunfight ensued. Walls says (he gave a statement to the Milwaukee police in 1989) that he fired his .25 caliber handgun blindly toward the house. Tragically, a 53 year old neighbor, Euclid Lewis, was shot and killed as he tried to usher people into his house. Walls maintains that his bullets did not kill Lewis. Instead, he contends that one of his confederates, Millard Bandy, fired the fatal shots from his 9 millimeter handgun. The State of Wisconsin prosecuted Walls for murder, but the trial court dismissed the charges when the police refused to identify an informant.

At sentencing in the district court, the government submitted a summary of the Lewis homicide file in an effort to prove that Walls' actions had "resulted" in Lewis' death. The government also introduced Walls' statement given to the Milwaukee Police in 1989. Walls' wife testified that Walls did not intend to harm Allen when he went to his house in 1989. In addition, Walls' attorney from his state court murder prosecution testified that he would have produced expert testimony that Millard Bandy fired the fatal shots.

The district court found that Walls' actions resulted in Lewis' death and departed accordingly. In particular, the district court found that, regardless of whether Walls fired the fatal shot, he "put in motion this series of events that resulted in the taking of a human life.... I believe there is a very, very direct nexus between the possession of a firearm charge ... and Euclid Lewis' death." The

1. The three counts were joined for sentencing purposes. However, Walls raises no challenge to his conviction under 18 U.S.C. § 2313.

district court cross-referenced the Homicide Guidelines and decided that Walls' actions fell somewhere between voluntary manslaughter and second degree murder. U.S.S.G. §§ 2A1.2, 2A1.3. It then split the difference between the relevant offense levels and found that the appropriate offense level was 29. After applying a two level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), the district court sentenced Walls to 122 months imprisonment and three years of supervised release. The district court also sentenced Walls to 12 months on the stolen vehicle conviction, to be served concurrently with the 122 month sentence. Walls does not challenge this sentence.

## ANALYSIS

■ We apply a three-step approach in reviewing an upward departure: (1) we review *de novo* the district court's reason for departing upward; (2) we review for clear error whether the facts that support the grounds for departure actually exist; and (3) we examine the extent of the departure deferentially. *United States v. Ewers*, 54 F.3d 419, 421 (7th Cir.1995). At sentencing, the government has the burden of proof by a preponderance of the evidence. *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986). We have rejected consistently the appellant's argument that we should apply a more stringent burden of proof—clear and convincing—because an upward departure was involved. *See, e.g., Ewers*, 54 F.3d at 421; *United States v. Masters*, 978 F.2d 281, 286–87 (7th Cir.1992). In addition, although we have recognized the "self-evident unfairness" of sentencing a defendant based on uncharged criminal acts, we have upheld the practice. *United States v. Corbin*, 998 F.2d 1377, 1384 (7th Cir.1993) (collecting cases), *cert. denied*, — U.S. —, 114 S.Ct. 1124, 127 L.Ed.2d 432 (1994). Finally, the Federal Rules of Evidence do not apply in sentencing proceedings and, therefore, hearsay is permitted at sentencing, so long as the evidence is reliable and the defendant is afforded the opportunity to rebut. *Id.* at 1385.

### A. Cross-Referencing the Homicide Guidelines

■ The central issue here is Walls' culpability for Lewis' death. The Guidelines provide the instructions for answering this question. Sort of. U.S.S.G. § 2K2.1(c) instructs the sentencing court that if "death results" from the possession of a weapon during the commission of another offense, the court should cross-reference the "most analogous offense guideline from Chapter Two, Part A, Subpart 1"—the Homicide Guidelines. *United States v. Smith*, 5 F.3d 259, 262 (7th Cir.1993). Application of this Guideline requires two steps. First, the district court must ascertain whether death resulted from the defendant's conduct. If so, the district court must identify the analogous Homicide Guideline that most closely resembles the defendant's conduct. *Id.*

■ We have not yet had occasion to define "resulting in death" for purposes of U.S.S.G. § 2K2.1(c). However, we have discussed the concept in reference to U.S.S.G. § 5K2.1, the general "death results" Guideline. In *United States v. White*, 979 F.2d 539, 545 (7th Cir.1992), we held that § 5K2.1 departures must be supported by findings that death was intentionally or knowingly risked. A jury found White guilty of interstate transportation of a minor for the purpose of prostitution. White had arranged for a sixteen year old runaway to be a prostitute. Shortly thereafter, the girl was murdered, presumably by a John. The district court departed upward from the base offense level of 18 on the ground that White had caused the girl's death. The district court found that White had "put into motion a chain of events that contained an inevitable tragic result," and that the victim's death was foreseeable. *Id.* at 545.

Therefore, the question is whether Walls' conduct was intentional or reckless and whether Lewis' death was a foreseeable risk of Walls' conduct. It was. Even under Walls' version of the events, Walls armed himself to go "talk" with a man who had, within the previous year, shot Walls and stolen his drugs. Walls was accompanied by a number of men who also were armed. Clearly they realized that gunfire was possi-

ble, if not probable. Once the gunfight began, Walls shot blindly towards Allen's house. We agree with the district court's finding that Walls, like the defendant in *White*, put into motion a chain of events that ended in a tragedy. Regardless of whether Walls fired the fatal shot, for purposes of § 2K2.1, Walls' conduct resulted in Lewis' death.

■■ The next step in the analysis is not simple. The district court had four choices for most analogous homicide: first degree murder, second degree murder, voluntary manslaughter, or involuntary manslaughter. U.S.S.G. §§ 2A1.1–4. The district court did not have much guidance in choosing the appropriate analogy. Although there is a wealth of state statutory and common law elaborating on the gradations of homicide, there is a relative paucity of federal authority. In addition, the Guidelines' instruction to choose the most "analogous" level of homicide means that the district court has some discretion about which kind of homicide is most appropriate.

No one argued seriously in the district court that Walls' conduct was analogous to first degree murder. The court found no evidence of "malice aforethought,"[2] and Walls' conduct did not fit any of the situations described in 18 U.S.C. § 1111(a). The government presented a number of theories, including transferred intent and joint venture, to support its argument that Walls had committed second degree murder. However, we agree with the district court that second degree murder was inappropriate as it also requires malice aforethought. 18 U.S.C. § 1111(a). Voluntary manslaughter also was not quite right because it is defined as "the unlawful killing without malice upon a sudden quarrel or heat of passion." 18 U.S.C. § 1112. Furthermore, involuntary manslaughter was not a perfect fit because it is defined as "unlawful killing without malice ... [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due

caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112. Again, this did not apply because Lewis' death resulted during the commission of a felony.

■ Given the above, what was the district court to do? The district court decided that Walls' conduct fell halfway between second degree murder and voluntary manslaughter. This may seem odd, but under the Guidelines' instruction to find the "analogous" homicide, it is reasonable. We previously approved a district court's use of this "split the difference" (or as Judge Skinner called it at oral argument "glissando") methodology in *White*, 979 F.2d at 544. Appellant's argument that neither second degree murder nor voluntary manslaughter is appropriate misses the point. Under the Guidelines, a defendant's sentence should reflect the true nature of the conduct underlying the offense of conviction. *Corbin*, 998 F.2d at 1383–1384. In following the cross-referencing dictates of U.S.S.G. § 2K2.1(c), the district court is permitted to use common sense in identifying the "analogous" variety of homicide, a necessarily fact-intensive endeavor. *United States v. Martin*, 63 F.3d 1422, 1435 (7th Cir.1995). The district court did not err in identifying Walls' conduct as falling halfway between second degree murder and manslaughter. Walls' sentence was proper.

## B. *Joinder*

■ Walls' claim that the district court erred in joining the two felon-in-possession charges at trial is wholly without merit. Rule 8(a) of the Federal Rules of Criminal Procedure provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or

---

2. We previously have defined "malice aforethought" to include "a predetermination to commit an act without legal justification or excuse.... A malicious design to injure.... The

intentional doing of an unlawful act which was determined upon before it was executed...." *United States v. Prevatte*, 16 F.3d 767, 780 (7th Cir.1994) (citations omitted).

transactions connected together or constituting parts of a common scheme or plan.

Walls pins his misjoinder argument on the facts that the two charges concerned incidents four years apart and involving two different types of handguns. This argument falls in the face of *United States v. Coleman*, 22 F.3d 126, 131–134 (7th Cir.1994). In *Coleman*, we addressed the joinder of four felon-in-possession charges. Two of the charges involved "discrete, unconnected events." *Id.* at 132. Nevertheless, given that the defendant was charged with four identical violations of 18 U.S.C. § 922(g)(1), offenses which "could only vary in time and location but not in their essential elements," it was proper to join the four charges. "Simply put, if offenses are of like class, although not connected temporally or evidentially, the requisites of proper joinder should be satisfied so far as Rule 8(a) is concerned." *Id.* at 133. Likewise, it was proper for the district court here to join the two § 922(g)(1) charges against Walls, irrespective of the four year gap between the two events.

### C. *Ineffective Assistance of Counsel*

■ Walls also argues that his attorney was ineffective.[3] We have cautioned repeatedly that appellants should not bring ineffective assistance claims on direct appeal. *See, e.g., United States v. Davenport*, 986 F.2d 1047, 1050 (7th Cir.1993). The record from the trial court almost never is sufficient to reveal an attorney's ineffectiveness. "The best the defendant can hope for is a remand, with instructions to explore explanations for conduct that appears questionable." *Id.* Not surprisingly, Walls has moved for a remand in order for the district court to hold an evidentiary hearing. However, we find the record insufficient to discern the necessity for a remand.

"[O]rdinarily, the appropriate route to raise an ineffective assistance claim is not via a screening in the court of appeals but by motion to the district court under 28 U.S.C. § 2255." *United States v. Fischer*, 34 F.3d 566, 568–569 (7th Cir.1994) (citation omitted).

**3.** A detailed discussion of the facts underlying Walls' ineffective counsel claim is unnecessary

As in *Fischer*, Walls does not seek to have his ineffective assistance claims resolved on the existing record and we do not reach them. We deny Walls' motion for remand, but our affirmance is without prejudice to his ability to present those claims properly in the future.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

given our disposition of this issue.