JOHN C. PORFILIO, Senior Circuit Judge,
partial dissent.
While joining the remainder of the court’s opinion, I respectfully dissent from *1234 Part III. After reflection, I think the stipulation of facts upon which the sentencing was based has greater importance in the propriety of upward departure than given by either this or the district court. Courts considering whether to approve enhancements of the nature employed by the district court have uniformly required that the harm done to a victim be reasonably foreseeable in the commission of the crime of conviction. In the context of the enhancements, reasonable foreseeability exists when the crime of conviction puts in motion a “chain of events” that ends with harm of a particular nature. Because none of the crimes to which Mr. Fortier pled guilty did so, the horror which befell the victims of Timothy McVeigh and Terry Nichols cannot be credited to him. For those reasons, I believe this court should conclude the sentences were legally improper.
Prior to the original sentencing, the Government and Mr. Fortier entered into a stipulation of facts which was submitted to the district court. In part, that stipulation stated:
The United States has no evidence that when Fortier received the firearms from McVeigh there was any agreement, 'promise or condition that Fortier would sell the firearms and return part of the proceeds to McVeigh and/or Nichols.
The United States has no evidence tracing to any bombing expenditure ... the $2,000 given to McVeigh by Fortier for Nichols. The United States also has no direct evidence that Michael or Lori Fortier had actual knowledge that this $2,000 would be or was used to further or facilitate the bombing conspiracy,
(emphasis added).
What makes this stipulation critical to the sentencing considerations? In my judgment, it is because the language of the guidelines employed by the district court to justify upward departure requires a causal link between the crimes of conviction and the grounds for departure. I begin first by recalling the crimes to which Mr. Fortier pled.
There were four: (1) Transportation of Stolen Firearms; (2) Conspiracy to Transport Stolen Firearms; (3) False Statement to the FBI; and (4) Misprision of a Felony. None of these offenses bear any patent relationship to the crimes of which McVeigh and Nichols were convicted, nor could they have factually resulted in the harms relied upon by the district court for upward departure.
The court relied upon five separate guideline sections to conclude Mr. Fortier’s crimes justified upward sentencing departure. All of them specifically require that the harms described in the particular guideline result from the crime of conviction. For example, sections 5K2.1 and 5K2.2 respectively allow an increase in sentence “[i]f death resulted” or “[i]f significant physical injury resulted.” Similarly, section 5K2.3 allows an increase “[i]f a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense.” Section 5K2.5 allows an increase “[i]f the offense caused property damage or loss not taken into account within the guidelines.” Finally, section 5K2.7 allows enhancement “[i]f the defendant’s conduct resulted in a significant disruption of a governmental function.” (all emphases added). Moreover, all of the departures, except for that found in section 5K2.7, state the extent of the increase depends in part upon the “extent to which death or serious injury was intended or knowingly risked.” (emphasis added).
Although United States v. Molina observed the “[cjase law interpreting the ‘resulting from’ language of subsection lB1.3(a)(3) is surprisingly sparse,” 106 F.3d 1118, 1123 (2d Cir.1997), it construed this phrase to permit applying the bodily injury ' enhancements in U.S.S.G. §§ 2B3.1(b)(2)(A) and (b)(2)(C) to all of the harm that was a “reasonably foreseeable” consequence of defendant’s conduct. Id. at 1124-25 (seven-level § 2B3.1(b)(2)(A) *1235 and four-level § 2B3.1(b)(3)(B) enhancements justified because co-defendants’ conduct “ ‘put into motion a chain of events’ that contained the ‘inevitable tragic result’ of the bullet being lodged in the bystander’s foot”). We adopted this reasoning in United States v. Metzger, 233 F.3d 1226, 1228 (10th Cir.2000), in affirming defendant’s enhanced sentence under U.S.S.G. § 2B3.1(b)(3)(B), recognizing defendant’s flight and pursuit were links in the “chain of events” set in motion by his bank robbery. See also United States v. Walls, 80 F.3d 238, 241-42 (7th Cir.1996) (upward departure under U.S.S.G. § 2K2.1(c)(B) “if death results” based on criminal history of illegal possession of a firearm that “resulted in” death of an innocent bystander); United States v. Fox, 999 F.2d 483, 486 (10th Cir.1993) (all harm that resulted from unlawful use of unauthorized credit card included charges her husband made “which flowed naturally from” the unauthorized use); United States v. Fitzwater, 896 F.2d 1009, 1012 (6th Cir.1990) (two-level enhancement under § 2B3.1(b)(3)(A) because it is “reasonably foreseeable” that participation in bank robbery might result in “the infliction of such an injury to a bank teller”); United States v. Salazar-Villarreal, 872 F.2d 121, 123 (5th Cir.1989) (defendant’s reckless flight and the resulting death of an alien and injury to others illegally transported provided factual basis for upward departure of sentence under §§ 5K2.1 and 5K2.2 policy statements).
Each of those cases bears a common thread making enhancement appropriate, even though the resultant harm was not an element of the crime of conviction. Each crime committed by a defendant started an unbroken chain of events — a continuum— that ended in unusual harm. Even though the defendant did not actually inflict the harm, his criminal act started an uninterrupted string of circumstances from which the harm resulted. A careful examination of the record discloses that the necessary chain of events is not present in this case.
It is easy to see that the offenses of making a false statement to the FBI and misprision of a felony are temporally disconnected and thus impossible to link to the harm to the victims of the McVeigh Nichols conspiracy. Indeed, they were committed after the explosion resulted in death and injury and in no way could have initiated the “chain of events” leading to the bombing. Because of that temporal disconnection, neither of those crimes could have caused the injury for the purpose of enhancement.
Although the remaining crimes of transporting stolen weapons and conspiring to do so took place before the bombing, they had no more of a linkage to the harm than the other two. The facts we know, augmented by the government’s stipulation, make it difficult for me to understand how Mr. Fortier “intended” or “knowingly risked” that his transportation of stolen firearms would result in the bombing of the Murrah Building. Yet, the court finds this connection in Mr. Fortier’s knowledge of the McVeigh plans.
Indeed, the court here states, “Fortier also knew the guns he sold for McVeigh and Nichols were stolen as a ‘fund raiser’ to offset expenses related to the bombing.” See ante, at 1232 (emphasis added). Yet, even if it were proven Mr. Fortier knew McVeigh and Nichols stole the guns to offset the expenses of their conspiracy, that knowledge does not supply the proper nexus. In this case, the chain of events did not start with Mr. Fortier’s knowledge of the MeVeigh-Nichols conspiracy. In no way was it part of the continuum between the crimes of conviction and the harm to the victims. Indeed, it was collateral to the critical events, and the government has conceded as much.
First, the government’s stipulation admits there is no evidence of any agreement between Fortier, McVeigh, and Nichols that Mr. Fortier was to sell the firearms when he received them. Second, Mr. For-tier was not a party to the theft of the guns nor to the supposed agreement to sell them and use the proceeds to further the conspiracy. Moreover, he only acquired a portion of the stolen guns as consideration *1236 for his agreement to accompany McVeigh to Kansas long after the guns had been stolen. United States v. Fortier, 180 F.3d 1217, 1220 (10th Cir.1999). The evidence suggests Mr. Fortier’s interest in the guns was not to further the bombing conspiracy, but to fatten his own wallet. Indeed, with McVeigh’s cooperation, he transported his share of the guns to Arizona where he kept them for at least two months. It was only when McVeigh demanded he do so, he sold some of them at local gun shows. Id. at 1221. Although it is unclear how much money all these sales accounted for, we know Mr. Fortier ultimately gave McVeigh $2,000 assumably to transfer to Nichols. Id. We also know he made $2,100 from the first sale and conducted at least three sales, from which it may logically be assumed he made more than the $2,000 he gave to McVeigh. Finally, we do not know what Nichols did with the money he supposedly received from McVeigh, leading to the third critical point upon which I base my disagreement. The government has stipulated there is “no evidence tracing to any bombing expenditure ... the $2,000 given to McVeigh by Fortier for Nichols.” Nor is there anything other than conjecture that links the $2,000 to the bombing.
I think these facts lead to only one conclusion. There is simply no evidentiary basis within the record of this case for this court’s conclusion the harm suffered by the Murrah Building bombing victims was “foreseeable” in the commission of the crimes of which Mr. Fortier stands convicted. Without a factual nexus between crime and harm, that is, without evidence the harm was but a part of the continuum of events flowing from the crimes of conviction, there is no factual ground upon which foreseeability can be based.
As I view the paradigm upon which the district court relied, it is this: (1) Mr. Fortier knew McVeigh and Nichols were guilty of conspiring to bomb the Murrah Building, and indeed knew of the intimate details of how that crime was to be carried out; (2) he knew McVeigh and Nichols stole guns to help finance their crime; (3) Mr. Fortier came into possession of some of those guns; (4) the crimes committed by McVeigh and Nichols and their results were uncomparably horrific; (5) even though the crimes of which Mr. Fortier was convicted had no factual connection with that horror, his associations and the harm suffered by the victims require he be punished far more severely than called for by the crimes of conviction. I can neither accept nor approve this view.
Indeed, the chain of events described in the court’s footnote 5, which relies on this paradigm, has a facial logic, but it overlooks the necessity for commencing the chain with the crimes of conviction. The most notable discrepancy is that two of the crimes, misprision of a felony and making an untruthful statement to the FBI occurred after the bombing took place. There simply is no nexus between crime and harm in these instances. Although the court finds the nexus to the remaining crimes in Mr. Fortier’s prior knowledge of the McVeigh Nichols conspiracy, that knowledge only becomes significant if Mr. Fortier took the stolen guns to sell them for McVeigh and Nichols. The court assumes this was the situation, but the evidence obviates that assumption.
It is undisputed Mr. Fortier received some of the weapons for the limited purpose of paying him consideration for his accompanying McVeigh to Kansas. Fortier, 180 F.3d at 1220. There is no evidence that McVeigh gave that portion of the stolen guns to Mr. Fortier to sell to raise funds for the bombing conspiracy. Indeed, it was only after Nichols complained to McVeigh about his need for money that McVeigh asked Mr. Fortier to start selling guns in his possession. Id. at 1221. When coupled with the government’s inability to establish that the money Mr. Fortier gave McVeigh was used to offset expenses of the bombing conspiracy, the receipt of the weapons by Mr. Fortier and their subsequent sale cannot be part of a logical chain between his prior knowledge of the bombing conspiracy and the ultimate death and destruction. I do not believe there is a *1237 factual basis for the court’s assumption. Moreover, I do not believe the gap in the logical chain of events between the crimes of conviction and the harm to the victims can be either ignored or explained. As I view the record, it is only surmise that supports the court’s conclusion that the harm was foreseeable in the commission of his crimes.
I do not ignore the repugnance of the crimes of McVeigh and Nichols, nor do I minimize the pain, suffering, and damage visited upon their victims. Nonetheless, under our present guidelines, I believe those circumstances, themselves do not justify the sentences meted out by the district court. I believe those sentences are contrary to law, and I would reverse and remand once again for resentencing.