In the

# United States Court of Appeals
### For the Seventh Circuit

No. 02-2068

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TRIMAINE JONES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01-CR-218—**Rudolph T. Randa**, *Chief Judge.*

ARGUED OCTOBER 17, 2002—DECIDED DECEMBER 24, 2002

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Appellant Trimaine Jones appeals his sentence on a felon in possession of a firearm charge. He argues that the district court incorrectly applied the homicide cross-reference found in § 2K2.1(c) of the federal sentencing guidelines, resulting in an incorrectly increased base offense level and sentence. Because we believe the district court did not err in applying the cross-reference, we affirm the sentence imposed below.

## I. History

On August 28, 2001, Trimaine Jones was indicted by a federal grand jury on two counts: (1) being a felon in

possession of a firearm and (2) being a felon in possession of ammunition. While these charges were pending, on September 6th, Trimaine was released from custody on his own recognizance, under the condition that he reside at a halfway house. Unfortunately, on September 20th, he disappeared from the halfway house and a warrant was issued for his arrest. It was not until October 4th, after Trimaine was involved in an armed robbery that resulted in the death of a sixteen-year-old boy, that he was re-apprehended.

On September 30th, Milwaukee police officers were called to the scene of a robbery and shooting. There they found sixteen-year-old Jemarcus Beck shot to death. After some investigation, the police determined that Trimaine, his brother Neimyiah, and their friend Rashaad Cotton were responsible for the robbery and murder. Earlier that day, the three had agreed to commit a robbery, driving around in Cotton's car until they happened upon three teenage males. At that point, Cotton stopped the car, and Neimyiah and Trimaine—both armed—got out and approached the young men. While two of them fled safely, Beck could not get away. Neimyiah demanded that Beck give up his money, and when he did not act quickly enough, Neimyiah shot him. Cotton and the Jones brothers fled. Beck was pronounced dead at the scene.

On October 4th, Milwaukee police had begun a search for the Jones brothers after concluding that they were involved in the September 30th armed robbery and murder. As the arresting officers took Neimyiah into custody, they saw Trimaine walking by the scene. The police ordered him to stop, but instead he fled. During a brief foot pursuit, the police saw Trimaine clutch at the waistband of his pants. The police eventually arrested Trimaine as he attempted to scale a fence; a black 9mm semi-automatic handgun was found at the base of the fence where Trimaine had attempted to climb it. Trimaine later ad-

mitted to the police that he had been in possession of the gun found at the scene and had possessed that same gun during the September 30th robbery.

Trimaine was subsequently indicted by a second federal grand jury on one count of being a felon in possession of a firearm, based on his October 4th arrest. On December 3rd, Trimaine was found guilty on both counts charged in the first indictment, and was later sentenced to 70 months incarceration on those charges. On March 6, 2002, Trimaine pleaded guilty to the second felon-in-possession charge, pursuant to an agreement with the government, and was sentenced to 120 months imprisonment on this count. It is this second sentence at issue in this appeal.

## II. Analysis

In reviewing the sentence imposed by the district court, we review factual determinations underlying the application of the sentencing guidelines for clear error; interpretation of a guidelines provision is a legal question we review *de novo. United States v. Taylor*, 272 F.3d 980, 982 (7th Cir. 2001). Application of the homicide cross-reference is reviewed for clear error. *United States v. Westmoreland*, 240 F.3d 618, 635 (7th Cir. 2001).

Generally, the federal sentencing guideline applicable to a violation of 18 U.S.C. § 922(g)(1), prohibiting possession of a firearm by a felon, is § 2K2.1, which provides for varying base offense levels depending on the offense and offender characteristics. *See* U.S.S.G. § 2K2.1(a), (b) (2002). Additionally, § 2K2.1(c) provides for a "Cross Reference," authorizing a sentencing court to look to other guidelines provisions to impose a higher sentence on an offender under certain circumstances. In this case, Trimaine was sentenced pursuant to the homicide cross-reference found in § 2K2.1(c)(1)(B):

> If the defendant used or possessed any firearm . . . in connection with the commission . . . of another offense . . . apply . . . (B) if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above.

U.S.S.G. § 2K2.1(c)(1). The district court reasoned that because Trimaine had been arrested for possession of the same firearm he had previously used during the armed-robbery/felony-murder incident four days earlier, the homicide cross-reference applied. Employing that provision, the district court determined Trimaine's base offense level to be 29,[1] adjusted that level downward to 26 based on the defendant's acceptance of responsibility, and accordingly sentenced Trimaine to the statutory maximum of 120 months imprisonment. According to the presentence investigation report, had the district court found the homicide cross-reference inapplicable, Trimaine would have faced a base offense level of 20, with a corresponding sentence range of 63 to 78 months.

In this appeal, Trimaine argues that it was error for the district court to consider the armed-robbery/felony-murder episode of September 30th in determining his base

---

[1] The district court apparently reached this base offense level by "splitting the difference" between a base offense level of 33 for second-degree murder, U.S.S.G. § 2A1.2, and a base offense level of 25 for voluntary manslaughter, U.S.S.G. § 2A1.3. We have previously endorsed such an approach. *See United States v. Walls*, 80 F.3d 238, 242 (7th Cir. 1996) ("In following the cross-referencing dictates of U.S.S.G. § 2K2.1(c), the district court is permitted to use common sense in identifying the 'analogous' variety of homicide, a necessarily fact-intensive endeavor . . . . The district court did not err in identifying Walls' conduct as falling halfway between second-degree murder and manslaughter." (citation omitted)).

offense level. Essentially, Trimaine contends that the armed robbery/felony murder was not "relevant conduct" that should have been considered in determining his sentence. He concedes that the sentencing court is free to look beyond the conduct of the offense of conviction; the issue in this appeal is how far beyond the offense of conviction the district court was permitted to reach to determine an appropriate sentence.

We begin by emphasizing that the language of the guidelines and decisions by this Court make clear that § 1B1.3, the relevant conduct provision of the guidelines, governs the application of the homicide cross-reference found in § 2K2.1(c).[2] "The general principle which controls whether a cross-reference is appropriate is the relevant conduct guideline. . . . [but] [t]he relevant conduct guideline is not without limits." *Taylor*, 272 F.3d at 982-83 (citation omitted). Specifically, the relevant conduct provision states:

> Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two . . . shall be determined based on the following:

---

[2] As we noted in *United States v. Ritsema*, the language of § 2K2.1's cross-reference provision is no more specific than that of § 1B1.3(a), and therefore does not preempt application of the relevant conduct guideline's definitions. 31 F.3d 559, 565 (7th Cir. 1994); *see also* U.S.S.G. § 1B1.3 cmt. background ("Subsection (a) establishes a rule of construction by specifying, *in the absence of more explicit instructions in the context of a specific guideline*, the range of conduct that is relevant to determining the applicable offense level . . . ." (emphasis added)). We therefore focus our inquiry on the definition of relevant conduct found in § 1B1.3(a).

(1)(A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . .

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . .

U.S.S.G. § 1B1.3(a). This section thus constrains what conduct a sentencing court may consider when determining the appropriate base offense level, cross-references, and adjustments for a particular offender. We note that the relevant conduct guideline is not limited temporally: "the Relevant Conduct provision directs a court to sentence a defendant for uncharged conduct germane to the charge-offense by authorizing it to consider events before, during, and after the offense conduct." *United States v. Ritsema*, 31 F.3d 559, 566 (7th Cir. 1994).

Therefore, before the district court could apply the § 2K2.1 homicide cross-reference to Trimaine, it was required to find that the armed robbery/felony murder of September 30th was relevant to the task of sentencing him for the firearm-possession offense. Section 1B1.3(a)(1) sets out three general situations in which conduct will be considered relevant: conduct that occurs "during the commission of the offense," conduct that occurs "in preparation for" an offense, or conduct that occurs "in the course of attempting to avoid detection or responsibility" for an offense. U.S.S.G. § 1B1.3(a)(1). In this case, the armed-robbery/felony-murder incident was not conduct "in preparation for" the offense of being a felon in possession of a firearm, nor was it conduct occurring "in the course of attempting to avoid detection or responsibility" for that offense. That leaves the possibility that the armed robbery/felony murder is relevant conduct if it "occurred dur-

ing the commission of the offense of conviction." We think that clearly to be the case.[3]

In *United States v. Smith*, we approved the sentencing court's consideration of the offender's use of a firearm to shoot and kill a fellow partygoer when it sentenced that offender for illegally possessing the firearm as a felon. 5 F.3d 259, 261-62 (7th Cir. 1993). We noted that "*[w]hile Smith carried the handgun*, his 'other offense' (not his 'offense of conviction') involved the death of [the fellow partygoer]." *Id.* at 261 (emphasis added). Trimaine's conduct during the armed robbery/felony murder is similarly relevant to the charge of being a felon in possession. While Trimaine carried his firearm, he participated in the armed robbery of September 30th. The armed robbery/felony murder not only occurred "during the commission of" the felon-in-possession offense, but Trimaine's status as a felon in possession was a factor *enabling* him to undertake the armed robbery. The district court did not err in finding this incident to be relevant conduct.

Having concluded that the armed robbery/felony murder was relevant conduct for the purpose of applying the homicide cross-reference, we must further determine whether "death resulted" from Trimaine's use and posses-

---

[3] It was additionally argued that consideration of the armed robbery/felony murder as relevant conduct was appropriate under guideline § 1B1.3(a)(2), which includes within its definition of "relevant conduct" "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction," but only with respect to offenses for which grouping under § 3D1.2(d) would be required. Grouping would not be required in this case—in fact, grouping of the felon in possession count with the homicide charge is specifically excluded from the operation of § 3D1.2(d)—rendering § 1B1.3(a)(2)'s relevant-conduct definition inapplicable here.

sion of the firearm. Under the terms of § 2K2.1(c)(1)(B), only if "death resulted" from the use or possession of a firearm is the homicide cross-reference applicable. We have previously held that "[t]o determine 'if death resulted,' the sentencing court must ascertain whether the defendant's conduct was 'intentional or reckless' and whether death was 'a foreseeable risk' of that conduct." *United States v. Thomas*, 280 F.3d 1149, 1155 (7th Cir. 2002) (quoting *United States v. Walls*, 80 F.3d 238, 241 (7th Cir. 1996)). "Generally, this means that the defendant's possession of a weapon during the commission of another offense 'put into motion a chain of events that ended in a tragedy.'" *Id.* (citing *Walls*, 80 F.3d at 241).

We have no hesitation in concluding that Trimaine's actions on September 30th were "reckless" and involved a "foreseeable risk" of death. His participation in the armed robbery "put into motion" a series of events that resulted in the death of Jemarcus Beck. Trimaine, his brother, and his friend agreed to commit an armed robbery, then drove around in a search of potential victims. When they came across three young men, Trimaine and his brother, both armed, got out of the car and confronted them. While two of the young men fled, the third was told to give up his property, and when he did not act fast enough, Trimaine's brother shot him. Trimaine's participation in this incident was reckless and clearly involved a foreseeable risk that one of the robbery victims would be killed, even if it was not Trimaine's gun that fired the fatal shot. *Accord Walls*, 80 F.3d at 241-42 (approving application of the § 2K2.1 homicide cross-reference to a defendant who fired blindly at a house during a gunfight in which an uninvolved neighbor was killed, noting that "[r]egardless of whether Walls fired the fatal shot, for purposes of § 2K2.1, Walls' conduct resulted in [another's] death."); *United States v. White*, 979 F.2d 539, 545 (7th Cir. 1992) (approving application of the general "death results"

guideline, U.S.S.G. § 5K2.1, to a defendant who transported a minor across state lines for the purpose of prostitution, when the minor was later killed, presumably by a customer). We therefore find that "death resulted" from Trimaine's participation in the armed robbery.

### III.  Conclusion

In imposing the sentence at issue in this appeal, the district court's decision to consider Trimaine Jones' participation in the September 30th armed robbery and accompanying murder—an incident accomplished in part through the use of the firearm illegally possessed by Trimaine—simply reflected "the common sense notion that one who puts a firearm to a nefarious use deserves a sentence more harsh than one who does no more than possess the gun." *United States v. Corbin*, 998 F.2d 1377, 1385 (7th Cir. 1993). We agree with the district court that Trimaine's participation in this armed robbery/felony murder was clearly "relevant conduct" that resulted in death, and as such was properly considered in sentencing him on the firearm charge. The sentence imposed by the district court is therefore AFFIRMED.

A true Copy:

       Teste:

 

                _____
                *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*