UNITED STATES of America, Plaintiff–Appellee,

v.

George WILSON, Defendant–Appellant.

No. 04–2635.

United States Court of Appeals, Seventh Circuit.

Argued May 9, 2006.

Decided June 27, 2007.

Jeff Cramer, Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

James M. Falvey, Chicago, IL, for Defendant–Appellant.

Before Hon. RICHARD D. CUDAHY, Circuit Judge, Hon. MICHAEL S. KANNE, Circuit Judge, Hon. DIANE P. WOOD, Circuit Judge.

## ORDER

George Wilson was convicted of multiple offenses stemming from his role in a credit card fraud ring, and the district court sentenced him to 21 months' imprisonment and three years' supervised release. On appeal he argues that his attorney provided constitutionally ineffective assistance by effectively conceding Wilson's guilt at trial. Wilson also seeks resentencing based on the district court's application of the mandatory sentencing guidelines. Though Wilson's ineffective-assistance claim may have merit, he admits the need for further factual development, and we therefore dismiss the claim so that he may bring it in a more appropriate forum. As for his sentencing argument, Wilson did not preserve the error in the district court and is entitled at best to a limited remand in con-

formity with *United States v. Paladino,* 401 F.3d 471 (7th Cir.2005).

## I.

Beginning in October 2000, Wilson, a citizen of Iraq and permanent resident of the United States, took part in a scheme with codefendants Ahmed Allababidi and Freddie Ellis to commit credit card fraud. Ellis, who worked at a hotel, stole credit card information from unsuspecting patrons with the aid of a "skimmer," a handheld device that captures the data stored on a card. Ellis passed the skimmer on to Allababidi, who downloaded the information to a computer. Wilson received the stolen information from Allababidi and encoded it onto new cards, which could be used to purchase goods on the original cardholders' accounts. Wilson, Allababidi, and a fourth member of the conspiracy then purchased merchandise that they sold for profit or kept for their own use.

In April 2001 the men were arrested by the Secret Service, and in August Wilson was charged along with Allababidi and Ellis with conspiracy to commit credit card fraud, 18 U.S.C. § 1029(b)(2), possessing access device-making equipment with intent to defraud, *id.* § 1029(a)(2), and two counts of trafficking in unauthorized access devices, *id.* § 1029(a)(4). Wilson decided to cooperate with the government by assisting with the investigation of other members of the conspiracy. In February 2002, pursuant to a plea agreement, Wilson pleaded guilty to conspiracy. The court ordered the preparation of a presentence investigation report and scheduled a hearing at which it would accept the plea and impose sentence.

At around the same time, Wilson was in the process of changing attorneys. At the beginning of the October 22, 2002, sentencing hearing, the district court granted counsel's motion to withdraw, and Wilson's new attorney, Gary Sternberg, stepped in. The court heard discussion from the parties on sentencing matters, beginning with Wilson's objection to the amount of the loss ascribed to him in the PSR. Moments into the hearing, Sternberg suggested that Wilson might benefit from the presence of an interpreter. After exploring the possible language barrier, the judge refused to take Wilson's plea until he was satisfied that an Assyrian interpreter had gone over the plea agreement and PSR with him and that he understood "100 percent of the words there." Over the government's protestation that no communication problem existed, the court continued the case.

That was the end of Wilson's plea deal. After a number of continuances, during which time Sternberg filed several (cumulative) objections to the amount of the loss as calculated in the PSR, the district court refused to accept the plea agreement. Wilson later attempted to enter a blind guilty plea, but the district court refused to accept it. The government filed a motion urging the district court to reconsider its decision because Wilson had already admitted the facts of the crime and waived his trial rights; only sentencing issues remained. The district court denied the motion and ordered the case to go to trial. The court's orders do not include any reason for insisting on a trial, but the government's motion sheds some light on the subject: "The government shares the Court's frustration with the miscommunication that existed between the Court and defense counsel during the plea and sentencing phase of this matter as defense counsel continued to argue sentencing matters during the plea colloquy." The record does not contain a transcript of the failed plea colloquy.

At trial in October 2003, both the government and Wilson's own attorney mentioned during opening statements that

Wilson had confessed to the crime and cooperated with the government. The prosecutor stated: "[Wilson] admitted to the Secret Service agents that he had been committing this crime, then he decided to stop cooperating. And that brings us here today." Wilson's attorney, Sternberg, did not object. During his own opening, he stated that "[Wilson] cooperated with the government." Sternberg also tried to refute the suggestion that Wilson had stopped cooperating, telling the jury that the Wilson had "given his all, fessed up to everything," and he "never wanted to go to trial." Again during closing argument Wilson's attorney told the jury that this was a "[s]trange case" in which it had been allowed to hear that "from the very beginning, when George was arrested and taken into custody, he cooperated." Counsel also referred to Wilson's "statements of confession and admission," and stated that Wilson had "admitted his guilt to everything." Counsel then argued that Wilson had been "overcharged" because the government's evidence did not prove the existence of a conspiracy even if Wilson had committed some isolated crimes.

The jury found Wilson guilty on all four counts. Sentencing occurred on May 10, 2004. Over Wilson's objection the district court accepted the calculation in the PSR and found that his crimes involved an intended loss of $157,500, resulting in a seven-level upward adjustment in his offense level. See U.S.S.G. § 2F1.1(b)(2). Wilson argued for a "minimum" sentence given his cooperation with the government. The government opined that Wilson should not be punished for the "surreptitious route" his case took to trial, and simply requested a sentence within the range. Wilson's total offense level was 14 and his criminal history category I, yielding a guideline range of 15 to 21 months. The district court sentenced Wilson to 21 months' imprisonment, three years' supervised release, and restitution in the amount of $22,693.24.

In December 2004, a few months after this court decided *United States v. Booker*, 375 F.3d 508 (7th Cir.2004), Wilson moved for release on bond pending appeal. He argued that a sentence that did not include impermissible judicial factfinding—the court's calculation of the intended loss—would be six months' imprisonment at the most. Having been incarcerated for nearly that long already, Wilson sought release pending appeal and the Supreme Court's decision in *Booker*. The government opposed the motion, arguing that even if resentencing became necessary in the future, it would prove the amount of the loss and seek a similar sentence. The district court considered several possible outcomes and was not persuaded that there was any scenario under which Wilson would be resentenced to a term shorter than the 21 months it had imposed; it denied his motion. Wilson has now completed his term of incarceration; he was released on December 30, 2005, to begin serving three years of supervised release. He also faces the possibility of removal from the United States as a result of his felony conviction and sentence exceeding one year of imprisonment.

## II.

■ Wilson first argues that he was prejudiced by the deficient performance of his attorney at trial. He contends that counsel, by conceding Wilson's guilt in opening and closing argument "without any cognizable strategy," guaranteed a guilty verdict "regardless of the evidence." Wilson argues that counsel could not have been pursuing a strategy of conceding guilt on the "indefensible" counts in order to more credibly argue his innocence on others, *see United States v. Holman*, 314

F.3d 837, 840 (7th Cir.2002), because counsel acknowledged that Wilson "admitted his guilty *to everything.*" But instead of seeking an immediate decision on the merits, Wilson urges us to remand the case for further factfinding in accordance with a procedure occasionally employed by the courts of appeals for the First and District of Columbia Circuits. *See United States v. Colon–Torres,* 382 F.3d 76, 84–85 (1st Cir. 2004); *United States v. Rashad,* 331 F.3d 908, 909–10 (D.C.Cir.2003).

Ordinarily we do not consider claims of ineffective assistance of counsel on direct appeal, primarily because the factual underpinnings of the claim are not sufficiently developed at this stage. This is the point of *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003): it is better to present an ineffective-assistance claim on collateral review, when the district court can develop "the facts necessary to determining the adequacy of representation during an entire trial," *id.* at 505, 123 S.Ct. 1690, than on direct appeal, when "appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose," *id.* at 504–5, 123 S.Ct. 1690. We have noted that "[a]fter *Massaro,* only the rarest and most patently egregious of ineffective assistance claims are appropriately brought on direct appeal because there is no risk to delaying until a full record is made." *Harris,* 394 F.3d at 558. Wilson has been released from prison, but filing a collateral attack remains an option: he has a three-year term of supervised release to serve, during which time he will still be "in custody." *See United States v. Trotter,* 270 F.3d 1150, 1152 (7th Cir.2001).

Collateral review offers Wilson advantages beyond building a factual record. First, his chance of success on the merits would be greater on collateral review than it is on direct appeal. *See Harris,* 394 F.3d at 557; *United States v. Trevino,* 60 F.3d 333, 338 (7th Cir.1995). To prevail on his claim, he must demonstrate both that Sternberg's conduct fell below an objective standard of reasonableness and that the substandard performance prejudiced him—that is, but for the errors there is a reasonable probability that the result of the trial would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Harris,* 394 F.3d 543, 554–55 (7th Cir.2005). At least one error by Sternberg is apparent on this record. *See Holman,* 314 F.3d at 843 ("Given the importance of the constitutional rights implicated when guilt is conceded and the ethical obligations of attorneys to consult with their clients, . . . an attorney's concession of a client's guilt without any indication of the client's consent to the strategy is deficient conduct for *Strickland* purposes."). But the record on prejudice is not as clear, particularly where the government introduced substantial evidence of Wilson's guilt, including the testimony of his two coconspirators, a tape recording of him discussing the "skimming" operation, and physical evidence linking him to the crimes. Indeed, by requesting a limited remand and not a decision, Wilson essentially admits that he cannot prevail on the record as it stands.

A second benefit of raising the ineffective-assistance claim on collateral review is that Wilson could expand the scope of his claim. Otherwise, the law of the case doctrine would prevent him from pointing to any of Sternberg's other errors in a later collateral attack because "ineffective assistance of counsel is a single ground for relief no matter how many failings a lawyer may have displayed." *Peoples v. United States,* 403 F.3d 844, 848 (7th Cir.2005). But Wilson's brief hints at, and there is

some evidence to support, grounds for Sternberg's ineffectiveness other than the concession of guilt. For example, it appears that the district court rejected the plea agreement and ordered a trial—ultimately leading to Wilson's conviction on four counts instead of one—because of Sternberg's misbehavior.

Despite the relative advantages of pursuing his claim in a collateral attack, Wilson does not wish to take that route because, he says, he "may be foreclosed from pursuing any habeas remedy since he will likely be removed prior to the resolution of his ineffective assistance claim if pursued via § 2255." He anticipates that his removal will precede the resolution of a § 2255 motion because "a habeas proceeding typically takes several months, if not years, to be complete and ... pursuit of habeas relief does not stay a removal proceeding." At oral argument, Wilson's attorney went further, suggesting that a collateral attack would be rendered "moot" by Wilson's removal from the United States.

Wilson is correct that removal proceedings will not routinely be stayed pending the resolution of a collateral attack on a criminal conviction. An immigration judge may grant a continuance for "good cause." See 8 C.F.R. § 1240.6. Because a pending collateral attack does not affect the finality of a criminal conviction for immigration purposes, it has no bearing on an alien's removability and is not "good cause" for a continuance. See In Re De Leon–Ruiz, 21 I. & N. Dec. 154, 156–57 (BIA 1996); In Re Polanco, 20 I. & N. Dec. 894, 895 (BIA 1994); In Re Gabryelsky, 20 I. & N. Dec. 750, 751–52 (BIA 1993). However, the decision is discretionary, and an IJ may continue removal proceedings so that the immigrant can pursue a collateral attack. E.g., In Re Mahmood, No. A43 197 874, 2005 WL 1104594 (BIA Jan. 27, 2005) (IJ

granted two continuances so that alien could pursue collateral relief).

Assuming arguendo that Wilson would not get a continuance of removal proceedings, it is still not clear why he believes that collateral relief would be foreclosed by his removal, or as he suggested at oral argument, that his removal would "moot" his § 2255 motion. We candidly acknowledge that it will be difficult for him to prosecute his collateral attack from abroad. Nevertheless, he will have a "live" case so long as (1) his three-year term of supervised release has not expired, see United States v. Trotter, 270 F.3d 1150, 1152 (7th Cir.2001), or (2) he continues to suffer collateral consequences from his conviction, see Sibron v. New York, 392 U.S. 40, 55–56, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); A.M. v. Butler, 360 F.3d 787, 790 (7th Cir.2004). In the context of aliens' petitions under 28 U.S.C. § 2241, deportation after the petition is filed does not render the case moot so long as some collateral consequences of the removal remain, such as the bar to reentry. See Zegarra–Gomez v. INS, 314 F.3d 1124, 1126 (9th Cir.2003); Leitao v. Reno, 311 F.3d 453, 456 (1st Cir.2002); Smith v. Ashcroft, 295 F.3d 425 (4th Cir.2002); Tapia Garcia v. INS, 237 F.3d 1216, 1218 (10th Cir.2001); Chong v. INS, 264 F.3d 378 (3d Cir.2001).

To avoid the possibility of his removal before the resolution of a collateral attack but defer a decision on the merits until the record is complete, Wilson asks us to remand to the district court for further factfinding. He finds support for this approach in cases decided by the First and D.C. Circuits, which will order a limited remand when the record is not developed enough to decide the merits of the claim but there is some evidence of ineffectiveness. Colon–Torres, 382 F.3d at 84; see also Rashad, 331 F.3d at 910. The D.C.

Circuit notes that the practice "is entirely consistent" with *Massaro,* which does not *require* ineffective assistance claims to be presented for the first time on collateral review. *Rashad,* 331 F.3d at 911.

We have only rarely remanded cases on direct review for evidentiary hearings on ineffective-assistance claims. In *United States v. Myers,* 892 F.2d 642 (7th Cir. 1990), we vacated the judgment of conviction and remanded the case for an evidentiary hearing. We noted that it was an "unusual" case because "the trial record itself compels a strong although not conclusive inference of ineffective representation—so strong that Myers' conviction should not be allowed to become final until the issue is resolved." *Myers,* 892 F.2d at 649; *see Colon–Torres,* 382 F.3d at 84. And in *United States v. Olson,* 846 F.2d 1103 (7th Cir.1988), we remanded the case to the district court for an evidentiary hearing and ultimately concluded that the defendant had not received ineffective assistance of counsel. *Id.* at 1107. However, the opinion does not make clear the reason for ordering the remand in the first place.

Since *Massaro,* we have not remanded any case for an evidentiary hearing on an attorney's effectiveness. In *Holman,* we noted that the record was unclear as to whether the defendant had consented to his attorney's decision to concede his guilt at trial but stated "[b]ecause this is a direct appeal and not a review of a habeas corpus petition, we do not have the option of remanding to the district court to determine whether or not Holman in fact consented." *See* 314 F.3d at 843 n. 4. And in *Harris,* when the appellant belatedly asked the court to remand for an evidentiary hearing, we refused the request because of its lateness but also noted that the consideration of an ineffective-assistance claim on direct appeal must be based on the record as it stands at time of the appeal. *See* 394 F.3d at 559 (citing *United States v. Godwin,* 202 F.3d 969, 973 (7th Cir.2000) ("Our inquiry must be confined to facts that appear in the record as it now stands.")).

We are not persuaded that the facts of this case justify departing from our typical approach of deciding ineffective-assistance claims either on direct review using the record as it stands, or on appeal from the denial of a motion under 28 U.S.C. § 2255. We are not convinced that a workable standard exists for determining how much evidence of attorney error in the appellate record suffices to trigger a limited remand, nor do we see obvious benefits of that method that outweigh its complexity. Notably, in *Massaro,* the Supreme Court stated that collateral review is the preferred forum for raising ineffective-assistance claims even if the record on appeal "contains some indication of deficiencies in counsel's performance." 538 U.S. at 504, 123 S.Ct. 1690. And although Wilson's immigration woes present an additional wrinkle, his case is not sufficiently peculiar to justify our changing our approach for him alone. Finally, we note that the instant criminal offense is not Wilson's last, and we are reluctant to make an exception for him that might ultimately prove irrelevant in light of criminal activity that has taken place since his arrest in this case.

■ Accordingly, we decline Wilson's request to remand for a hearing. But neither will we reach the merits of his claim. In other cases in which we have turned down a request for an evidentiary hearing on an ineffective-assistance claim, we have done so "without prejudice to [appellant's] ability to present those claims properly in the future" because the appellant did not seek resolution of the claim on the existing record. *See United States v. Walls,* 80 F.3d 238, 243 (7th Cir.1996);

*United States v. Fischer,* 34 F.3d 566, 569 (7th Cir.1994). The government insists that we can decide Wilson's claim (against him) based on the record as it now stands, but Wilson has never sought a decision on this record. We will not deprive him of the opportunity to bring his claim later if he so chooses.

Wilson also argues that his 21-month sentence, imposed before the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), must be vacated because the district court applied the sentencing guidelines as mandatory. He maintains that he preserved the error "at least twice" by objecting to the amount of loss calculation in the PSR and by arguing for release on bond pending appeal based on this court's decision in *Booker.* Neither of these amounts to a *Booker*-type objection sufficient to preserve the issue for appeal. In challenging the amount of the loss, Wilson did not invoke the Sixth Amendment, *Apprendi,* or *Blakely,* or argue that the district court lacked the power to make the finding. *See United States v. Schlifer,* 403 F.3d 849, 854 (7th Cir. 2005); *United States v. Krueger,* 415 F.3d 766, 780–81 (7th Cir.2005). And he did not raise the second argument until months after his sentence was imposed. *See, e.g., United States v. Washington,* 417 F.3d 780, 788 (7th Cir.2005) (appellant forfeited argument about judicial factfinding "by not bringing it to the district court's attention *at sentencing"*) (emphasis added). Wilson therefore forfeited the issue and is entitled only to plain-error review. *See Paladino,* 401 F.3d at 481.

The government registers its objection to the procedure prescribed by *Paladino,* but it concedes that a limited remand is appropriate because the district court applied the sentencing guidelines as mandatory. And, although the district court

hinted during the hearing on Wilson's motion for release on bond pending appeal that it would not impose a lesser sentence under any circumstances, the court did not offer any reasons why its sentencing decision would not change with greater discretion, so we cannot be sure. *See United States v. Lee,* 399 F.3d 864, 866 (7th Cir. 2005) (explaining that a *Paladino* remand is appropriate only when "uncertainty otherwise would leave this court in a fog about what the district judge would have done with additional discretion"). Although we doubt Wilson has much to gain from it, we order a LIMITED REMAND to ask the district court whether it would have imposed a different sentence had it not been constrained by mandatory sentencing guidelines. The remainder of the appeal is DISMISSED without prejudice to Wilson's ability to bring the ineffective-assistance claim in a collateral attack.