# United States Court of Appeals
## For the First Circuit

No. 02-2667

UNITED STATES OF AMERICA,

Appellee,

v.

JAIME O. COLÓN-TORRES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Selya, and Lipez,
Circuit Judges.

Alexander Zeno for appellant.

Rose M. Vega, with whom H.S. García, United States Attorney,
Sonia I. Torres, Assistant United States Attorney and Chief,
Criminal Division, and Thomas F. Klumper, Assistant United States
Attorney, were on brief for appellee.

September 9, 2004

**LIPEZ**, <u>**Circuit Judge**</u>.  Defendant Jaime O. Colón-Torres ("Colón") pled guilty to one count of an indictment for a drug offense.  On appeal, Colón argues that his plea was not knowing and voluntary and that his sentence should be vacated because he was deprived of the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution.  In pursuing this Sixth Amendment claim, Colón alleges several deficiencies in the performance of his attorney, Joaquín Peña Ríos ("Peña"), including claims that Peña failed to investigate Colón's criminal history prior to recommending a plea agreement (Colón was sentenced as a career offender), and that Peña became ensnared in an actual conflict of interest during Colón's sentencing hearing, effectively depriving Colón of counsel at a critical stage of the proceedings.

Although we rarely entertain ineffective assistance of counsel claims on direct appeal, instead relying on collateral proceedings for such challenges, this case fits within an exception to the rule.  Here, the indicia of ineffectiveness are sufficiently developed in the record to warrant, in the exercise of our discretion, direct appellate review.  After a careful analysis of the record and the case law, we remand for an evidentiary hearing on whether the judgment should be vacated and Colón should be allowed to withdraw his guilty plea due to the ineffective assistance of counsel.

Because the background facts of the underlying criminal activity are not at issue in this case, we do not repeat the details here. For our purposes, it suffices to say that defendant pled guilty to conspiracy to possess with the intent to distribute, inter alia, five kilograms or more of a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1] The facts and circumstances surrounding defendant's relationship with his attorney are both more relevant and complicated. We turn now to those details.

### A.  Colón's Pro Se Motion for New Counsel

After Colón was indicted and arrested in November 2001, the court appointed Peña as defendant's counsel on the day of defendant's arraignment. Following two status conferences held on December 19, 2001, and February 1, 2002, Colón filed a pro se motion requesting the appointment of a new attorney. The district court received the motion on April 2. In his pro se motion, which Colón filed in Spanish and which is now reproduced in English for the appellate record, Colón contended that "the client-attorney

---

[1]21 U.S.C. § 841 (a)(1) provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." 21 U.S.C. § 846 states that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

relationship has deteriorated due to the attitude by counselor Peña of insisting in his persuasive way to try to push me into a decision without having counseled me in a competent and effective manner so that [the defendant] would make a correct decision before the Court." Defendant's pro se motion specifically alleged that his attorney had provided him with no documents related to his case, including the indictment, discovery materials, or any statements of governmental witnesses producible under the Jencks Act, 18 U.S.C. § 3500.[2] Additionally, the defendant alleged that while he was talking to his attorney on March 25, 2002, they "were approached by another one of [Peña's] clients . . . [who] started yelling to Peña saying he was an incompetent and anti-ethical attorney, that he never handed him any document regarding his criminal case and that he cheated him by stating that he was ready to see his case." Then, according to defendant's translated pro se motion, "Peña reacted in an anti-professional and anti-ethical manner and the argument between him and his [other] client descended to levels which cannot be quoted at this time." The

---

[2]The Jencks Act provides, inter alia, that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The term "statement" includes "a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." 18 U.S.C. § 3500(e)(3).

-4-

district court did not respond to defendant's pro se motion for new counsel.

## B.  The Plea Agreement

On April 24, 2002, Peña filed a motion for change of plea on behalf of Colón, and the district court set the change of plea hearing for May 2.  On that date, the defendant pled guilty to count one of the indictment after signing the plea agreement that same day.  The plea agreement indicated that the penalty for the offense charged "is a term of imprisonment which shall not be less than ten (10) years and not more than Life" in addition to certain fines and a period of supervised release, in accordance with 21 U.S.C. § 841(b)(1)(A) (detailing the minimum and maximum sentences for, inter alia, crimes involving five or more kilograms of cocaine).  The plea agreement also stated that "the Court shall impose a sentence in accordance with the applicable provisions of the Sentencing Guidelines . . . without regard to any statutory minimum sentence [a reference to the so-called "safety valve" provision], if the court finds that the defendant meets the criteria contained in [18 U.S.C.] § 3553(f)(1)-(5) [which are reflected in] Guidelines § 5C1.2."

The United States Sentencing Guidelines set forth the criteria referred to in the plea agreement. The first criterion is that "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines [in U.S.S.G.

-5-

§4A1.1]." U.S.S.G. § 5C1.2(a)(1). Sentencing Guidelines § 4A1.1 sets forth the number of criminal history points assigned to a defendant based on his prior sentences of imprisonment. In the plea agreement, the parties assumed a criminal history category of II, which corresponds to a defendant having two or three criminal history points as described in U.S.S.G. § 4A1.1. This assumption – that Colón has two or three criminal history points – would preclude the application of U.S.S.G. § 5C1.2, which requires, inter alia, that a defendant have no more than one criminal history point. Accordingly, under the criminal history category assumption in the plea agreement, Colón was not eligible for sentencing without regard to the statutory minimum.

The Sentencing Guidelines calculations in the plea agreement provide that based on a drug quantity amount of at least five hundred grams but less than two kilograms of cocaine, Colón's base offense level ("BOL") was 26 pursuant to the drug quantity table in U.S.S.G. § 2D1.1(7). The plea agreement also stipulates that "[s]hould defendant clearly demonstrate acceptance of responsibility for the offense, defendant's base offense level shall be reduced by three levels pursuant to U.S.S.G. § 3E1.1(b)." These agreements resulted in a BOL of 23, and, given the assumption of a criminal history category of two, a Sentencing Guidelines range of fifty-one to sixty-three months of imprisonment. The government and the defendant agreed to a recommended sentence of

sixty months of imprisonment.  Because Colón pled guilty to a drug quantity of five hundred grams to two kilograms (as opposed to the more than five kilogram quantity for which he was indicted), his statutory minimum sentence dropped from ten years to five years. Compare 21 U.S.C. § 841(b)(1)(A) (providing that in cases involving five kilograms or more of cocaine, the defendant shall be imprisoned for not less than ten years and not more than life), with id. § 841(b)(1)(B) (providing that in cases involving five hundred grams or more – and, implicitly, less than five kilograms – of cocaine, the defendant shall be imprisoned for not less than five years and not more than forty years).

### C. Change of Plea Hearing

At the change of plea hearing on May 2, the district court orally went through the plea agreement with Colón.  The court said that "if we assume a criminal history category of one, then the guideline range would be 46 to 57 months.  But if we assume a criminal history category of two, which apparently is what you and your attorney and the attorney for the government think that is the correct criminal history category, then the guideline range would be 51 to 63 months.  Do you understand that up to now?"  Colón replied that he did.  The district court continued: "But since there is a statutory mandatory minimum of 60 months, then the guideline range would be 60 to 63 months and then the government and you would recommend to the court that I sentence you to the

-7-

bottom end of the guideline range which is 60 months."[3]  Again, upon questioning, Colón indicated that he understood the court's explanation that because the statute imposed a minimum sentence of five years for the drug quantity to which Colón pled guilty, the Guidelines sentencing range was effectively sixty to sixty-three months.

Finally, the court stated: "Now, are you aware of the fact that there is no stipulation as to the criminal history category but, as I mentioned before, it is assumed that your criminal history category is two. . . .  And if it's higher than two, then the guideline range would be 60 to 71 months instead of 60 to 63 months."  Since the plea agreement did not suggest that a career offender designation was a possibility, the court did not refer to the possibility of Colón being sentenced as a career offender under U.S.S.G. § 4B1.1.  Instead, the district court conveyed the impression that the likely maximum sentence Colón faced was seventy-one months, corresponding to a criminal history category of III, which is one category higher than the category assumed in the plea agreement.[4]  Peña said nothing to dispel this

_____

[3]This statement of a sixty-month mandatory minimum is based on the drug quantity to which Colón pled guilty – at least five hundred grams but less than two kilograms of cocaine – and not the drug quantity for which he was indicted, i.e., in excess of five kilograms of cocaine.

[4]In fact, the Guidelines provide increasing sentences by criminal history category up to a criminal history category of VI.

impression. Upon questioning, Colón continued to state that he understood the court's explanation.

### D. The Presentence Report

The presentence report ("PSR"), prepared on September 3, 2002, stated that Colón had three prior convictions under Commonwealth laws, and that his criminal history points totaled eight under U.S.S.G. § 4A1.1. Ordinarily, eight criminal history points would have earned Colón a criminal history category of IV. However, U.S.S.G. § 4B1.1 provides that a defendant will be treated as a career offender if he was at least eighteen years old when he committed the instant crime of violence or a controlled substance offense and has two prior convictions for either type of offense. The PSR then correctly identified Colón as a career offender, based on his prior convictions.[5]

Colón's career offender status affected the applicable sentence in two ways under U.S.S.G. § 4B1.1. First, all career

---

[5]As we will describe in greater detail, Colón does not dispute that he is in fact a career offender under the Guidelines, but he and Peña disagree about the timing of Peña's awareness of Colón's prior convictions. Colón's prior convictions and sentences, all of which took place after his eighteenth birthday, are as follows: (1) possession of an illegal weapon as violations of Article 168 of the Puerto Rico Penal Code and Article 8 of the Puerto Rico Weapons Law, for which he was sentenced to six months of imprisonment on February 17, 1987; (2) robbery with a weapon in violation of Articles 5, 6, and 8 of the Puerto Rico Weapons Law, for which he was sentenced to ten years of imprisonment on November 4, 1987; and (3) kidnaping, attempted murder, robbery, and illegal appropriation in violation of the Puerto Rico Weapons Law, for which he was sentenced to sixteen years of imprisonment on November 28, 1990.

offenders are assigned to criminal history category VI, the highest category in the Guidelines. Second, a career offender's BOL is the greater of either the BOL otherwise calculated under the Guidelines or the BOL listed in a table in U.S.S.G. § 4B1.1. This table sets the BOL according to the statutory maximum sentence for the underlying offense. Because the statutory maximum for the drug quantity to which Colón pled guilty (five hundred grams to two kilograms) was forty years under 21 U.S.C. § 841(b)(1)(B), his BOL as a career offender under U.S.S.G. § 4B1.1 should have been 34, which corresponds to a statutory maximum sentence of twenty-five years or more, but less than life imprisonment. The PSR incorrectly stated that "[b]ased on the statutory maximum term of imprisonment of 20 years, the base offense level should be increased to 32" under U.S.S.G. § 4B1.1, which corresponds to a statutory maximum sentence of between twenty and twenty-five years. The PSR committed this mistake despite correctly stating later that "[p]ursuant to the stipulation [in the plea agreement], the statutory maximum term of imprisonment is forty (40) years and the minimum is five (5) years per 21 U.S.C. § 841(b)(1)(B)."

The PSR carries the BOL error into its description of the sentencing options under the Guidelines provisions. There, the PSR assigns a total offense level ("TOL") of 29, which reflects a three-level acceptance of responsibility downward adjustment from the erroneous BOL of 32. A TOL of 29, coupled with a criminal

-10-

history category of VI, results in a Guidelines sentencing range of 151 to 188 months, which is the recommendation of the PSR. In fact, the TOL should have been 31, which would reflect a three-level acceptance of responsibility downward adjustment from the correct BOL of 34. A TOL of 31, coupled with a criminal history category of VI, would have resulted in a Guidelines sentencing range of 188 to 235 months. In short, the PSR was internally inconsistent on the statutory maximum sentence and incorrectly calculated the sentence that ought to be imposed on Colón under the Guidelines.

Additionally, it appears that the United States probation officer who prepared the PSR encountered some difficulty in reaching Peña to inform him that the PSR was available. The probation officer certified an addendum to the document noting these difficulties:

> Counsel for the Government was duly notified on September 24, 2002, and several attempts were made to notify Counsel for the defendant, pursuant to 18 U.S.C. § 3552(d) that the presentence investigation report was ready for their inspection. However, as they have not been able to review the report, objections, if any, have not been submitted.

According to the district court docket, the presentence report was transmitted to Peña on October 2, five days before the sentencing scheduled on October 7.[6]

---

[6]The sentencing hearing was rescheduled more than once, eventually taking place on November 14.

-11-

## E. The Amended Plea Agreement

In light of the information in the PSR about Colón's career offender status, Peña renegotiated the terms of Colón's plea with the government. The negotiations produced an amended plea agreement, which stipulated a drug quantity amount of four hundred to five hundred grams of cocaine, a smaller figure than the amount indicated in the original plea agreement (at least five hundred grams but less than two kilograms). As set forth in the amended plea agreement, this drug quantity resulted in a BOL of 24 under U.S.S.G. § 2D1.1(8). The parties further agreed that Colón would receive the three-level downward adjustment for acceptance of responsibility for a TOL of 21.

Next, the amended plea agreement erroneously stated that "[a]ssuming a Criminal History of VII, the sentence would be between fifty-seven (57) to seventy-one (71) months." The criminal history categories in the Guidelines do not exceed VI, and the sentencing range of fifty-seven to seventy-one months actually corresponds to a criminal history category of IV, which, leaving aside Colón's career offender status, would have been Colón's correct criminal history category.

However, the amended plea agreement went on to explain that "the parties are aware based on the Pre-Sentence Report that the defendant is a Career Offender . . . ." The amended plea agreement states that Colón's career offender status would result

in a BOL of 29, a criminal history category of VI, and a Guidelines sentencing range of 151 to 188 months.  While this criminal history category and Guidelines sentencing range are ultimately correct, Colón's <u>total</u> offense level, and not his <u>base</u> offense level, would be 29 once the three-level adjustment for acceptance of responsibility was incorporated.[7]  The government then agreed to recommend a sentence at the lowest end of the Guidelines range.

## F.   The Sentencing Hearing

On the morning of November 14, 2002, the district court called Colón's sentencing hearing and received the amended plea agreement, which Colón again had signed the day of the hearing.  At the sentencing hearing, the district court asked Colón a series of questions about the PSR.  Colón responded that his attorney had informed him of the PSR "[a] little bit" and that Peña "just told me that the [PSR] was recommending that my sentence be increased because I'm a career criminal."  After several exchanges, the court asked whether Colón needed more time to go over the PSR with Peña, and Colón said that he did not.  The court also asked whether Colón

---

[7]Colón's BOL would have been 32 because under U.S.S.G. § 4B1.1 this is the BOL corresponding to a statutory maximum sentence of twenty years, the maximum provided by the relevant statute.  <u>See</u> 21 U.S.C. § 841(b)(1)(C) (providing a maximum sentence of twenty years for violations involving less than five hundred grams of cocaine). The BOL of 32 presumably would be reduced to a TOL of 29 because of the three-level downward adjustment for acceptance of responsibility.

wished the court to correct any information in that report. The following exchange occurred:

> **Colón:** Well, what I don't understand is that when I plead guilty here the first time and that was because of advise [sic] that I had received that I should plead guilty to a lesser offense [and] what surprises me that now my criminal record is being used –

> **The court:** Why does that surprise you? You know the criminal record you had before you plead guilty, did you not?

> **Colón:** Well, it surprises me because my attorney came to talk to me about what was to my best advantage.

> **The court:** Of course, did you tell your attorney that you had three prior convictions?

> **Colón:** I gave him documents that so stated.

At that point, the court inquired of Peña whether he had seen those documents. Peña replied: "No, Your Honor. . . . The only information he gave me regarding the prior convictions of him was a charge for robbery and that was all the information I had from him regarding his prior convictions. So that's not true at all."

Hearing this account from Peña, the court recalled that five days earlier, on November 9, when Colón's sentencing had been scheduled and then postponed, Peña and the Assistant U.S. Attorney (AUSA) approached the bench and "at that time [Peña] informed the court that you were surprised because the criminal history category [as set forth in the PSR] had come out much higher than what you

-14-

were aware of."  When Peña confirmed that the court's recollection was correct, the court said:

> So, taking that into consideration it would seem to me that you were never informed by your client of the extent of his criminal record, otherwise you would have been aware that his criminal history category would be higher and, therefore, that would have been considered by you in talking to the government for a possible plea.

Peña confirmed the accuracy of the court's statement.  The court then went on to conclude:

> So, I believe that counsel's statement to the court is the truth in view of counsel's reaction when he came here for your sentence originally November 9th and he was surprised that your criminal history category was higher because of the prior convictions that you had which he had not learned about from you.  So, it would seem to me that the statements you are making to the court are not accurate.

Colón replied that "[t]he only thing I want to tell you, Your Honor, is that I have nothing against counsel."  After the court said "[o]h, I know that," Colón continued:

> So you can see that I am not lying to you, he has the document there and if he could please show it to you.  It's a document that states the cases that I had before and that I had given that document to him way at the beginning.  That is simply so you could see that I wasn't lying, that I am being honest.

When the court again turned to Peña for a response, counsel admitted that "we do have the document that was handed by him but this document was not handed previously to the change of plea

-15-

hearing.  This was handed afterwards.  We were not at the moment of the change of plea aware of the fact that he had those previous convictions, Your Honor."  The court then observed that "[i]n any event, once you learned of that fact, I believe you went back to the [AUSA] and tried to renegotiate the plea?"  Peña confirmed that he had in fact done so.

The court then confirmed that Colón had signed the amended plea agreement and began discussing the agreement's terms, noting that the reduction in drug quantity reduced Colón's TOL and thus his Guidelines sentencing range from 188-235 months down to 151-188 months.  After confirming that Colón was aware of both that reduction and that the government recommended a 151-month sentence, the court asked Peña if there was anything he would like to state for the record on behalf of Colón.  Peña offered that "the sentence that defendant is facing right now due to his category as a career offender . . . is much harsher than it should be if we do consider the instant offense by itself . . . ."  Peña then acknowledged that the court had limited discretion to depart from the Sentencing Guidelines and reiterated that the proposed sentence is a "very harsh sentence for our client . . . ."  Counsel went on to say that

> [o]ther than that, Your Honor, this is the first time that we ever face a situation like this.  The representation that defendant had done to the court is in terms of that.  We did not discharge our responsibility adequately although our position, Your Honor, is that we were from the very beginning trying to help

-16-

> our client, defendant, in terms of the negotiations with the government.

Following brief statements by Colón and the AUSA, the court sentenced Colón to 151 months of imprisonment, a six-year term of supervised release with certain conditions, and a special monetary assessment of $100.

**II.**

On appeal, Colón now argues that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment. Before we reach the merits of Colón's argument, we must first address the propriety of considering it on direct appellate review.

A. <u>Availability of Appellate Review</u>

When we receive ineffective assistance of counsel claims on direct appeal, we have three options. First, and most typically, we respond that such claims "must originally be presented to the district court" as a collateral attack under 28 U.S.C. § 2255.[8] <u>United States</u> v. <u>Ovalle-Marquez</u>, 36 F.3d 212, 221

---

[8]28 U.S.C. § 2255 provides that prisoners may seek relief through a writ of habeas corpus:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

(1st Cir. 1994) (quoting United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989)); see also United States v. Gonzalez-Vazquez, 219 F.3d 37, 41-42 (1st Cir. 2000) (collecting cases).  Often the record is not sufficiently developed to allow adequate consideration of the issue on appeal, and district courts are in a better position to adduce the relevant evidence.  See United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991) ("A principal purpose for the rule is the need to marshal and evaluate evidentiary facts required to place the adequacy of a defendant's representation into proper perspective.").

A second option is available "where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim."  Id.  In those comparatively rare situations, "an appellate court may dispense with the usual praxis and determine the merits of such a contention on direct appeal."  Id.; see also United States v. Downs-Moses, 329 F.3d 253, 264-265 (1st Cir. 2003).

This case falls into the gray area between these two categories.  In ways that we will explain, the record here is not developed enough to decide the ineffective assistance of counsel claim on the merits, yet it does contain sufficient indicia of ineffectiveness in the plea agreements, the PSR, and the transcripts of the change of plea and sentencing hearings to

-18-

warrant remanding for an evidentiary hearing on the issue without requiring defendant to bring a collateral attack instead.  See Unites States v. Theodore, 354 F.3d 1, 3 (1st Cir. 2003) (finding "indicia of ineffectiveness" and remanding to the district court so that it could "determine in the first instance whether defense counsel's total performance was such that a new trial is warranted"); see also United States v. Leone, 215 F.3d 253, 256 (2d Cir. 2000) (observing that "when faced with such a claim for ineffective assistance on direct appeal, we may do one of three things: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us"); accord Wayne R. LaFave et al., Criminal Procedure § 11.7(e) (2d ed. 1999).

B.   Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  It is well settled that this right to effective assistance of counsel attaches at all critical stages of the trial, United States v. Wade, 388 U.S. 218 (1967), including at sentencing. Gardner v. Florida, 430 U.S. 349, 358 (1977) (holding that "sentencing is a critical stage of the criminal proceeding at

which [defendant] is entitled to the effective assistance of counsel").

The touchstone for any ineffective assistance of counsel claim is the two-part test laid down by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687. In other words, defendant "must show that counsel's performance was so deficient that it prejudiced his defense." United States v. Ademaj, 170 F.3d 58, 64 (1st Cir. 1999) (summarizing Strickland). As the Strickland Court explained, "[u]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court applied Strickland's two-part test to ineffective assistance of counsel claims in the guilty plea context. Id. at 58 ("We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of

counsel."). As the Hill Court explained, "[i]n the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 58-59. Accordingly, Colón will have to show on remand "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

### 1. Alleged Deficiencies in Peña's Performance

This record raises troubling questions about Peña's performance.

### a. Colón's criminal history

It is undisputed that Peña did not independently investigate his client's criminal history before recommending that Colón enter into the plea agreement. Instead, according to Peña, he relied on Colón's representation that he had been convicted only once, for robbery, prior to this case. There is no per se rule that an attorney's failure to investigate independently his client's criminal history before advising him to accept a plea offer is ineffective assistance. Clients should answer truthfully their attorney's inquiries about their past convictions, and lawyers are entitled to rely reasonably on the explicit

-21-

representations of clients about their criminal histories.  See Strickland, 466 U.S. at 691 (explaining that counsel need not undertake investigations if they reach "a reasonable decision that makes particular investigations unnecessary").  We agree with one of our sister circuits that "a determination of whether reliance on a client's statement of his own criminal history constitutes deficient performance depends on the peculiar facts and circumstances of each case." United States v. Pease, 240 F.3d 938, 941-42 (11th Cir. 2001).  See also Strickland, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."); United States v. Russell, 221 F.3d 615, 621 (4th Cir. 2000) ("When representing a criminal client, the obligation to conduct an adequate investigation will often include verifying the status of the client's criminal record, and the failure to do so may support a finding of ineffective assistance of counsel.")[9]

[9]A client's criminal history almost always has significant bearing on the sentence a defendant will face under the Guidelines. Here, the recommended sentence agreed to by the parties in the original plea agreement (sixty months) was never a possibility in light of Colón's actual criminal history. Moreover, in the absence of any indication that Colón would have to be sentenced as a career offender, the sentence described by the judge at the change of plea hearing (a maximum of seventy-one months, based on a criminal history category only one step higher than that assumed in the plea agreement) was far below the sentence Colón actually faced. Colón's career offender status exposed him to an additional imprisonment term of between ten and fourteen years under the drug quantity calculation and other stipulations of the original plea

-22-

In this case, as in many cases involving claims of ineffective assistance of counsel, a factual dispute must be resolved before a court makes any judgment about the effectiveness of Peña's performance in dealing with Colón's criminal history. According to Colón, as recounted to the district court, he gave Peña a document that detailed Colón's full criminal history "way at the beginning" of their relationship. As we have noted, Peña disagreed with the account Colón gave the district court. He first told the court that "[t]he only information [Colón] gave me regarding the prior convictions of him was a charge for robbery and that was all the information I had from him regarding his prior convictions." Then, once Colón pointed out that Peña had the document detailing his criminal history with him in court, Peña admitted that "we do have the document that was handed by him but this document was not handed previously to the change of plea hearing. This was handed afterwards."

It is somewhat curious that Peña says that he received the document after the change of plea hearing, which was held May 2. The district court commented that Peña was surprised about Colón's career offender status, as revealed in the PSR, at the November 9 hearing. Presumably, if Peña had received the document before receipt of the PSR (transmitted to Peña on October 2, according to the district court docket), he would not have been

agreement.

-23-

surprised at the November 9 hearing and would not have waited to renegotiate the plea agreement until after receipt of the PSR. On the other hand, if Peña had received the document from Colón <u>after</u> he received the PSR, it seems likely that he would have said that Colón gave him the criminal history document after Peña received the PSR, not after the change of plea hearing.

On remand, the district court will have to engage in fact finding on what information Colón gave Peña about his criminal history and when he gave it to him. If Colón misinformed Peña about Colón's prior convictions when Peña recommended that Colón enter into the original plea agreement, that fact would have to be weighed carefully in deciding whether Peña still should have conducted some independent investigation of Colón's criminal history.[10] On the other hand, if Colón provided Peña with a document accurately detailing his past convictions prior to the recommendation of Peña that he accept a plea agreement that would not withstand scrutiny because of those past convictions, Peña's recommendation would seem to be clear evidence of ineffectiveness of counsel.

---

[10]Colón's appellate attorney plausibly represents that "obtaining a criminal record under local laws [is] a routine matter" and can be accomplished easily, presumably in part because all of Colón's prior convictions are for violations of Commonwealth laws.

-24-

b.  <u>Explaining the PSR or Plea Agreements</u>

Colón also alleges that Peña did not adequately explain the PSR or the plea agreements.  Colón signed both the plea agreement and the amended plea agreement on the day that they were each presented in court.  In the peculiar circumstances of this case, these last-minute signings suggest that Colón might have lacked sufficient time to consider the pleas, their ramifications, and any relevant advice Peña offered.  Additionally, the appellate record suggests that when Peña received the PSR, he did not discuss the PSR with Colón prior to renegotiating a plea on his behalf with the government.  In fact, the material before us suggests that Colón may have seen the PSR and the amended plea agreement for the first time the morning of his sentencing hearing. Moreoever, if Peña ever discussed with Colón the possibility of withdrawing the plea in light of the career offender disclosure of the PSR, there is no hint of such discussion in the record.

These suggestions of haste and limited communication with Colón add significance to Peña's failures to correct errors in the PSR (misstating the BOL, statutory maximum sentence, and Guidelines sentencing calculation) and in the amended plea agreement (misstating the criminal history category and substituting a "<u>base</u> offense level" for a "<u>total</u> offense level").  Unnoticed or unaddressed by Peña, these errors reflect the kind of inattentiveness to detail by Peña described by Colón in his pro se

motion for change of counsel.  The last-minute signings of the plea agreements, coupled with the uncorrected errors in the documents, may be further indicia of ineffective assistance of counsel.

### c.  Peña's Admission of Inadequacy at Sentencing

At the sentencing, Peña said that "[w]e did not discharge our responsibility adequately although our position, Your Honor, is that we were from the very beginning trying to help our client, defendant, in terms of the negotiations with the government."  This revealing comment was made after Colón insisted that Peña show the document detailing Colón's criminal history to the court.  Although Peña may not have intended this statement as an admission of ineffective assistance of counsel, it is an unusual concession for counsel to make, and it is one more indication of possible ineffectiveness that justifies the remand for an evidentiary hearing.

### d.  Conflict of Interest

Few commitments from an attorney to a client are more important than "a duty of loyalty, a duty to avoid conflicts of interest."  Strickland, 466 U.S. at 688.  On remand, the court must explore whether Peña's interests became adverse to Colón's during the sentencing hearing.  There are worrisome indications of such a conflict.

We have held that "in order to show an actual conflict of interest, a defendant must show that (1) the lawyer could have

pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties." United States v. Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir. 1994). Here, the relevant defense strategy was a possible motion for the withdrawal of Colón's plea. Peña might well have argued at the sentencing hearing that Colón should be allowed to withdraw his guilty plea because Colón was unaware of the consequences of his plea, given the impact of his criminal history category under the Sentencing Guidelines and the impossibility of the sixty month sentence agreed to by the parties. See Fed. R. Crim. P. 11(d)(2) (allowing plea withdrawals prior to sentencing when "the defendant can show a fair and just reason for requesting the withdrawal").[11] There is no indication in the record that Peña advised Colón at any time after receipt of the PSR of the possibility that he might file with the court a motion to withdraw his plea.

A conflict of interest might explain this silence. Such a withdrawal motion would likely implicate Peña's lack of awareness of Colón's criminal history, or his failure to appreciate its

---

[11]When Colón pled guilty in November 2002, the relevant standard was then reflected in Fed. R. Crim. P. 32(d), which allowed withdrawal prior to sentencing for "any fair and just reason." This provision of Rule 32 was incorporated into current Rule 11 as part of the 2002 amendments designed to generally restyle and reorganize the Criminal Rules.

significance, in recommending the original plea agreement.[12] Moreover, unaware of the possibility of a career offender sentence for Colón, the court itself arguably might have misled Colón at the change of plea hearing when it suggested to him that if his criminal history category was higher than a II, the Guidelines range he faced was only sixty to seventy-one months (corresponding to a criminal history category of III, when the statutory minimum of sixty months is taken into account). Together, Peña's pre-plea performance and the district court's explanation of the sentence might have provided "a fair and just reason" for withdrawal of the guilty plea. But Peña, perhaps absorbed in defending his own performance before the judge and inattentive to important details of the plea proceedings, apparently overlooked or chose to ignore the option of a motion to withdraw Colón's plea.

This would not be a small oversight. During the sentencing hearing, it would appear to Colón that he had only two options. He could disavow the amended plea agreement and be sentenced as a career offender under the original plea agreement's

---

[12]As we have described, Colón claimed that he had provided Peña with documents detailing his conviction history at an early stage in the proceedings and that Peña failed to properly advise Colón of the effect his career offender status would have on sentencing if Colón pled guilty. At the sentencing hearing, the district court asked Peña whether Colón was being truthful in his representations to the court. At that point, Peña and Colón were pitted against each other in a credibility contest, with the court ultimately deciding that Peña was truthful and Colón (potentially unrepresented in that contest) was not.

higher drug quantity calculation. Under that scenario, Colón would be exposed to a Sentencing Guidelines range of 188 to 235 months. Alternatively, he could continue under the terms of the amended plea agreement and be sentenced as a career offender under the amended plea agreement's reduced drug quantity calculation. Under that scenario, Colón would be exposed to a Sentencing Guidelines range of 151 to 188 months. Not surprisingly, he chose the latter course. If he was unaware that there was a third option – the possibility of withdrawing his plea entirely – his choice to go forward with the amended plea agreement was not an informed one.

We recognize that the silence of this record on Colón's awareness of the plea withdrawal possibility at this critical juncture of the proceedings may reflect only the inadequacy of the record. Perhaps Peña discussed that possibility with Colón and he rejected it.[13] An evidentiary hearing on remand can explore that question.

---

[13]In his briefs to this court, Colón claims that he was not aware that he could have moved to withdraw his guilty plea. In response to the government's point that Colón did not seek to withdraw his guilty plea below, Colón's reply brief states that "[o]ur position throughout our argument is that Appellant's [trial] counsel was ineffective, and, at sentencing, it did not exist at all. So, how could, and why, would the Appellant request something he did not know he had the right to." Colón's appellate briefs go on to claim that "[h]e was never offered a fair chance to withdraw his plea, nor did he know that he could have requested so since he attended a crucial part of the trial without legal representation as mandated by the Sixth Amendment to the Constitution."

Also, we are not suggesting that Peña should not have been allowed to defend himself at the sentencing hearing against a charge by his client that he claimed was inaccurate. We only observe that the court's inquiry into Peña's and his client's conflicting versions of Peña's performance arguably put their interests at odds, at least at that juncture, leaving Peña to defend himself against his client's accusations and possibly leaving Colón without conflict-free representation at a crucial point in the sentencing hearing.

Other courts have faced the implications of this kind of credibility contest between counsel and client at a critical stage of the criminal proceedings. In Lopez v. Scully, 58 F.3d 38 (2d Cir. 1995), the Second Circuit addressed petitioner's contention "that he was denied effective assistance of counsel since his attorney labored under an actual conflict of interest during the sentencing proceeding" because of the charges of incompetence petitioner brought forth against his attorney during the sentencing hearing. Id. at 41. Specifically, the petitioner filed a pro se motion to withdraw his guilty plea at the beginning of the sentencing hearing, claiming that his attorney had coerced him into pleading guilty. The Lopez court observed that "to argue in favor of his client's [position] would require admitting to serious ethical violations and possibly subject him to liability for malpractice; on the other hand, any contention by counsel that

-30-

defendant's allegations were not true would contradict his client." Id. at 41 (finding a conflict of interest between an attorney and his client when the client alleged that the attorney coerced him into pleading guilty) (citation and internal quotation marks omitted). Here, as in Lopez, "the attorney [arguably] put his own interests ahead of his client's by denying the truth of [his client's] allegations and thereby attacking his own client's credibility." Id.

Similarly, when defense counsel denied his client's accusations of wrongdoing at a plea-withdrawal hearing, the Seventh Circuit held that "[a]ny contention by counsel that defendant's allegations were not true would (and did) contradict his client. In testifying against his client, counsel acted as both counselor and witness for the prosecution. These roles are inherently inconsistent." United States v. Ellison, 798 F.2d 1102, 1107 (7th Cir. 1986). In combination with the other factors cited, there are sufficient indicia of such a conflict of interest here to justify remanding this case for a full evidentiary hearing on Colón's ineffective assistance of counsel claim.

2. Prejudice

As we observed earlier, Strickland requires both deficient attorney performance and resulting prejudice. 466 U.S. at 687. Here, the potential prejudice to Colón is easy to identify: the lost opportunity to attempt to withdraw the guilty

-31-

plea – or perhaps reject the original plea agreement – and exercise his constitutional right to a trial. Colón is now adamant that he wants to have that trial option. In his briefs to this court, Colón clearly expresses his desire to withdraw his plea and go to trial, claiming that he "was never given the option to choose between a long sentence or going to trial, and, if he had been offered it, he would have rejected it due to the little evidence against him. . . . He was never given such option nor did he know he had it. He knows now and he does request so now." Of course, these claims will be tested on remand in accordance with <u>Hill</u>'s requirement that defendant show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

In an attempt to blunt this prejudice argument, the government asserts that the trial court "cured" any problems with Peña's performance with its careful explanation of the consequences of Colón's plea at the change of plea and sentencing hearings. We have already noted one problem with the court's explanation of the plea consequences at the change of plea hearing because of its unawareness that Colón might be sentenced as a career offender. But the more basic issue is that the court's questions and explanations to Colón at the sentencing hearing (which were generally on the mark) never addressed the withdrawal of plea issue. We do not fault the court for this omission. Indeed, the

court established at the sentencing hearing that Peña renegotiated the plea agreement with the government when he read in the PSR that his client was a career offender. In light of this description by Peña of his renegotiation effort, the court might well have inferred that Peña was carrying out his client's wishes. It would certainly be unusual for counsel to conduct such renegotiations without first discussing with the client the range of options available, including the possibility of filing a motion to withdraw the plea. Yet the record raises the real possibility that such a discussion never took place. On the option of possibly moving to withdraw the plea, the trial court's questions and explanations about the consequences of a plea agreement are not a substitute for adequate legal advice by a competent attorney. The colloquies with the court did not cure the possible prejudice identified here.

## III.

The factors we have identified – Peña's handling of Colón's criminal history, his failure to correct errors in the PSR and the amended plea agreement, the plausible suggestion that he did not adequately explain the PSR or the plea agreements to Colón, the comment that "[w]e did not discharge our responsibility adequately," and the potential conflict of interest – provide serious indicia of ineffective performance that may have induced Colón to enter an improvident plea and then deprived him of the

opportunity to attempt to withdraw that plea and exercise his right to go to trial. Under these circumstances, we choose, in the exercise of our discretion, to remand this case to the district court for a full hearing on Colón's Sixth Amendment claim. If Colón establishes that claim, his sentence should be vacated and he should be afforded an opportunity to withdraw his guilty plea.[14] That said, nothing contained herein should be construed as expressing any opinion on the appropriate outcome of this case on remand.

**So ordered**.

---

[14]We suggest that the district court allow Colón's appellate attorney to continue to represent him on remand, given his familiarity with the case and his success on appeal.